821 A.2d 1230

**Ronald LLOYD, Sr., Appellant,**

**v.**

**PENNSYLVANIA MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 3, 2002.

Decided April 25, 2003.

Thomas More Marrone, Alan M. Feldman, Philadelphia, for Ronald Lloyd, Sr.

Guy Anthony Donatelli, William H. Lamb, West Chester, for Pennsylvania Medical Professional Liability Catastrophe Loss Fund.

## OPINION

Justice NEWMAN.

Ronald Lloyd, Sr. (Lloyd) appeals from an Order of the Commonwealth Court, which granted summary judgment in favor of the Pennsylvania Medical Professional Liability Catastrophe Loss Fund (CAT Fund). For the reasons discussed herein, we affirm the determination of the Commonwealth Court.

## FACTS AND PROCEDURAL HISTORY

On February 20, 1998, Robin Jackson–Lloyd (Robin), the wife of Lloyd, entered the Hahnemann Division of Allegheny University Hospital (AHERF) for a same-day elective procedure to remove a benign lesion from her right upper back. George Amrom, M.D. (Dr. Amrom) performed the surgical procedure and Yevgeny Lerner, M.D. (Dr. Lerner) provided anesthesia services. During the procedure, Dr. Lerner was responsible for maintaining Robin's respiratory status. Dr. Lerner administered excessive dosages of intravenous sedation, causing Robin to stop breathing. Although the physicians were able to resuscitate Robin, she suffered severe brain damage from the lack of oxygen, which ultimately caused her death on November 1, 1998.

As part of its employment agreement with Dr. Lerner, AHERF was responsible for payment of Dr. Lerner's insurance premiums and CAT Fund surcharges.[1] Regulations promulgated pursuant to the Health Care Services Malpractice Act (Act) provide that the surcharge payments must be received in the office of the Director of the CAT Fund within sixty days of the effective date of the policy. 31 Pa.Code § 242.6(a)(3). In the case *sub judice*, the effective date of Dr. Lerner's policy was January 1, 1998, so the surcharge payment was due to the CAT Fund by the latest date on March 2, 1998, which was sixty days after January 1, 1998. However, AHERF failed to pay Dr. Lerner's surcharge by that date.

On March 13, 1998, AHERF notified the CAT Fund of the possibility of a claim arising from Robin's surgery that could potentially exceed the primary insurance coverage of Dr. Lerner. By letter dated March 17, 1998, the CAT Fund notified both AHERF and Dr. Lerner that it was denying coverage for the claim, pursuant to 31 Pa.Code § 242.17(b), because AHERF failed to timely pay the surcharge. 31 Pa.Code § 242.17(b) provides that "[a] health care provider failing to pay the surcharge or emergency surcharge within the time limits prescribed will not be covered by the Fund in the event of loss." Following receipt of this letter, AHERF paid Dr. Lerner's CAT Fund surcharge in full on April 1,

1. Section 701(e) of the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, No. 111, *as amended*, 40 P.S. § 1301.701, provides in relevant part as follows:

   After December 31, 1996, the fund shall be funded by the levying of an annual surcharge on or after January 1 of every year on all health care providers entitled to participate in the fund. The surcharge shall be determined by the fund, filed with the commissioner and communicated to all basic insurance coverage carriers and self-insured providers. The surcharge shall be based on the prevailing primary premium for each health care provider for maintenance of professional liability insurance and shall be the appropriate percentage thereof, necessary to produce an amount sufficient to reimburse the fund for the payment of final claims and expenses incurred during the preceding claims period and to provide an amount necessary to maintain an additional 15% of the final claims and expenses incurred during the preceding claims period.

   40 P.S. § 1301.701(c)(1).

1998.[2]

In July of 1998, Lloyd filed suit against Dr. Lerner, Dr. Amrom, and AHERF for medical malpractice. Following a bench trial on stipulated facts, on December 1, 2000, the Court of Common Pleas of Allegheny County entered judgment in favor of Lloyd and against all three defendants in the amount of $4 million. In return for a release of his personal liability, Dr. Lerner tendered his primary insurance limits and assigned to Lloyd any and all rights he may have had against the CAT Fund or AHERF, including "the CAT Fund's denial of insurance coverage for Dr. Lerner." Reproduced Record (R.R.) at 51a. Lloyd instituted the instant action in the original jurisdiction of the Commonwealth Court, styled as a Petition for Review, challenging the denial of coverage. 42 Pa.C.S. § 761; *Willet v. Pennsylvania Medical Catastrophe Loss Fund*, 549 Pa. 613, 702 A.2d 850, 851 n. 1 (1997) (the Commonwealth Court has exclusive jurisdiction to hear cases involving the CAT Fund, an agency of the Commonwealth).

Lloyd served discovery requests on the CAT Fund, asking the fund to disclose instances in the past where it provided insurance coverage to a health care provider following receipt of a late surcharge payment. The CAT Fund objected to the request, prompting Lloyd to file a Motion to Compel Discovery. The Commonwealth Court, per Judge Friedman, denied the Motion, reasoning as follows:

> [T]he fact that the CAT Fund may have provided coverage in the past following receipt of a late payment is not relevant to this action. If the CAT Fund did so, it violated its own regulation, and this court has no authority to direct the CAT Fund to violate the law again simply because the CAT Fund has done so in the past.

*Lloyd v. Pennsylvania Medical Professional Liability Catastrophe Loss Fund*, No. 12 MD 2001, slip op. at 4 (Pa.Cmwlth. March 23, 2001).

2. Lloyd contends that the CAT Fund retained the late payment of AHERF for Dr. Lerner's surcharge. The CAT Fund does not seem to deny this statement.

Lloyd also sought permission to amend his Petition for Review to add a claim of bad faith against the CAT Fund, either under common law or pursuant to 42 Pa.C.S. § 8371, which provides as follows:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

The Commonwealth Court denied this request as well, concluding that CAT Fund acted in accordance with its legal duty and, therefore, could not have possibly acted in bad faith when it denied coverage to Dr. Lerner. Soon thereafter, the CAT Fund filed a Motion for Summary Judgment and Lloyd filed an Answer and a memorandum of law in opposition to the motion.

The Commonwealth Court granted summary judgment in favor of the CAT Fund. The court determined that, because the CAT Fund complied with the valid requirements of 31 Pa.Code § 242.17(b), it had no obligation or right to forgive the failure of AHERF to pay the surcharges owed by Dr. Lerner. Lloyd filed the present appeal to this Court, challenging: (1) the validity of the CAT Fund regulation mandating denial of coverage to a health care provider who fails to pay the surcharge on time, 31 Pa.Code § 242.17(b); (2) the decision of the Commonwealth Court to not require the CAT Fund to show prejudice; (3) the Order of the Commonwealth Court dismissing his Motion to Compel Discovery; and (4) the decision of the Commonwealth Court denying the joinder of a bad faith claim against the CAT Fund.

### Validity of CAT Fund Regulation

Lloyd first contends that 31 Pa.Code § 242.17(b) is invalid because the enabling legislation of the CAT Fund does not authorize the entity to deny coverage as a penalty for a

late surcharge payment it actually receives and retains. Section 701(e)(11) of the Act, applicable at the time of the instant litigation, provided that the Director of the CAT Fund "shall issue rules and regulations consistent with this section regarding the establishment and operation of the fund including all procedures and the levying, payment and collection of the surcharges ..." 40 P.S. § 1301.701(e)(11) (repealed).[3] Lloyd argues that the Act does not authorize the Director of the CAT Fund to establish rules allowing the fund to deny coverage as a penalty for a late surcharge.[4]

In *Dellenbaugh v. Medical Professional Liability Catastrophe Loss Fund,* 562 Pa. 558, 756 A.2d 1172 (2000), the CAT Fund denied coverage to a physician who failed to pay his surcharge. We upheld the denial of coverage and rejected an argument from the victim of the underlying malpractice that even though the doctor is not covered, the CAT Fund should still be responsible for payment of damages to the victim. In the course of our discussion, we stated the following:

> The [Act] provides that the fund shall be funded by the levying of an annual surcharge on or after January 1 of every year on **all** health care providers entitled to participate in the fund. Inasmuch as all providers are required to pay the surcharges, the clear and logical implication is that if a provider fails to pay his share, he may not participate in the coverage offered by the fund. Accordingly, the CAT Fund promulgated the regulation at 31 Pa.Code § 242.17(b),

3. The General Assembly repealed Section 701 in all parts except for subsection (e)(1) by Act of March 20, 2002, P.L. 154, No. 13, § 5104(a)(4), effective October 1, 2002. Subsection (e)(1) has been repealed by the same Act, §§ 5104(a)(5) and 5108(4), effective January 1, 2004.

4. Lloyd cites to Section 701(f), which stated that "[t]he failure of any health care provider to comply with any of the provisions of this section or any of the rules and regulations issued by the Director shall result in the suspension or revocation of the health care provider's license by the licensure board." 40 P.S. § 1301.701(f) (repealed). Thus, Lloyd maintains, the only proper penalty for failure to pay the surcharge is suspension of revocation of the license of Dr. Lerner, not denial of coverage. *See LTV Steel Company, Inc. v. Workers' Compensation Appeal Board (Mozena),* 562 Pa.205, 754 A.2d 666, 675 (2000) ("expressio unius est exclusio alterius;" the expression of one thing is the exclusion of another).

which states that a health care provider who fails to pay the CAT Fund surcharges will not be covered by the Fund in the event of loss.

To conclude that a provider can ignore the requirements of the [Act], yet reap the benefits thereof, is untenable. Further, when an insured is not covered for a loss, it is inconceivable that the claimant is nevertheless entitled to be paid by the carrier for that loss.

*Dellenbaugh,* 756 A.2d at 1174–1175 (internal quotations and citations omitted) (emphasis in original). The CAT Fund cites to *Dellenbaugh* as controlling authority on the issue of the validity of the regulation permitting the CAT Fund to deny coverage where the surcharge is not timely paid.

While Lloyd is correct in articulating that *Dellenbaugh* did not present this Court with the opportunity to directly address whether 31 Pa.Code § 242.17(b) was a valid exercise of the CAT Fund's rule-making authority, our decision is nonetheless instructive. Where an administrative agency is specifically authorized to adopt rules pursuant to a statute, the rules adopted by an agency are binding upon a reviewing court as part of the statute as long as they are "(a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable." *Bailey v. Zoning Board of Adjustment of City of Philadelphia,* 569 Pa. 147, 801 A.2d 492, 501 (2002) (quoting *Pennsylvania Human Relations Commission v. Uniontown Area School District,* 455 Pa. 52, 313 A.2d 156, 168–169 (1973)). Because Lloyd does not challenge the procedure utilized to issue the regulation, we must determine whether the regulation comports with the legislative grant of rulemaking authority and whether it is reasonable.

In deciding if the regulation is within the powers expressly granted to the Director of the CAT Fund by Section 701(e)(11), we must look to see whether the right to assess a penalty for failing to make a timely payment of a surcharge is included in the "establishment and operation of the fund including all procedures and the levying, payment and collection of the surcharges." 40 P.S. § 1301.701(e)(11) (repealed). "[A]lthough questions of statutory construction are for the

courts' determination, appropriate weight will be given to the interpretation of the agency administering the statute in question." *Allegheny Intermediate Unit No. 3 Education Association v. Bethel Park School District,* 545 Pa. 78, 680 A.2d 827, 829–830 (1996). *See Winslow–Quattlebaum v. Maryland Insurance Group,* 561 Pa. 629, 752 A.2d 878, 881 (2000) ("when the courts of this Commonwealth are faced with interpreting statutory language, they afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation"). *See also Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995) (our standard of review over a question of law is plenary).

We believe that, implicit in a grant of authority to levy and collect a surcharge is the authority to assess a penalty for the failure of a party to pay that surcharge on time. *See Dellenbaugh,* 756 A.2d at 1174 ("[i]nasmuch as all providers are required to pay the surcharges, the clear and logical implication is that if a provider fails to pay his share, he may not participate in the coverage offered by the fund"). The levying and collection of surcharge payments includes the ability to set forth a penalty for failing to timely pay these surcharges. We do not view the legislative imposition of a penalty in Section 701(f) as foreclosing the possibility of a regulation that imposes an additional penalty for a provider's failure to make timely payments. There is no language in Section 701(f) indicating that it sets forth the only penalty that can be assessed against a health care provider for failing to comply with the dictates of Section 701 or any of the rules or regulations promulgated thereunder. Moreover, as we held in *Dellenbaugh:*

The fund itself has no power to suspend or revoke a license; rather such sanctions can be applied only by the licensure board. The sanctions are not invoked immediately upon the board's receipt of notice from the fund. Rather, notification to the board merely sets in motion a process by which the license can be suspended or revoked.

*Dellenbaugh,* 756 A.2d at 1175.

Accordingly, we now hold that 31 Pa.Code § 242.17(b) was issued within the confines of the power granted to the Di-

rector of the CAT Fund pursuant to Section 701(e)(11). Based on our discussion in *Dellenbaugh,* stating that "when an insured is not covered for a loss, it is inconceivable that the claimant is nevertheless entitled to be paid by the carrier for that loss[,]" *Dellenbaugh,* 756 A.2d at 1175, we have already determined that the regulation was reasonable. Therefore, the Commonwealth Court properly determined that 31 Pa. Code § 242.17(b) was a valid exercise of the authority of the Director of the CAT Fund pursuant to Section 701(e)(11) of the Act.

### Prejudice

■ Lloyd next asserts that, even if the regulation were valid, the CAT Fund failed to show that it suffered prejudice by the failure of AHERF to pay Dr. Lerner's surcharge on time. Specifically, Lloyd points to the fact that AHERF did ultimately pay the surcharge and that the CAT Fund retained the late payment. Lloyd cites to *Brakeman v. Potomac Insurance Company,* 472 Pa. 66, 371 A.2d 193 (1977), in which this Court held that failure to provide timely notice of a claim will not result in forfeiture of coverage for that claim unless the insurance company can show that it suffered prejudice as a result of the untimely notice. However, *Brakeman* is inapposite to the case *sub judice.*

In *Brakeman* we reasoned that "[a]llowing an insurance company, **which has collected full premiums for coverage,** to refuse compensation to an accident victim or insured on the ground of late notice, where it is not shown timely notice would have put the company in a more favorable position, is unduly severe and inequitable." *Id.* at 196 (emphasis added). In the present case, however, the CAT Fund is not an insurance company and it had not collected the surcharge at the time Dr. Lerner notified it of the possible claim of Lloyd. AHERF only paid the surcharge after the CAT Fund informed it that it would not cover the claim because of the failure to remit the payment. To require the CAT Fund to cover a health care provider who fails to pay a required surcharge on time would have the effect of making the sur-

charge payment an option. It would be absurd to allow health care providers to forego their surcharge payments until a possible claim arises. The only way the CAT Fund is able to operate is by collecting annual surcharge payments from all health care providers. Lloyd has failed to provide this Court with controlling authority requiring the CAT Fund to demonstrate prejudice prior to denying coverage for failure to make a timely surcharge payment. Even if we were to find the existence of such a requirement, the CAT Fund would clearly suffer prejudice if it were required to cover health care providers who remit their surcharge payments only after a possible claim arises. *See generally Dellenbaugh.*

### Motion to Compel Discovery [5]

[3] In his penultimate averment, Lloyd claims that the Commonwealth Court erred in denying his Motion to compel the CAT Fund to disclose instances where it provided coverage despite receiving the mandatory surcharge payment late. The Commonwealth Court reasoned as follows in denying the Motion:

> Under [Pennsylvania Rule of Civil Procedure] 4011, no discovery shall be permitted which is beyond the scope of discovery set forth in [Pennsylvania Rule of Civil Procedure] 4003.1. [Rule] 4003.1(a) states that a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. "It is not ground for objection that the information sought will be inadmissible ... if the information sought appears reasonably calculated to lead to the discovery of any discoverable matter." Pa.R.C.P. No. 4003.1(b).

> Here, the fact that the CAT Fund may have provided coverage in the past following receipt of a late payment is not relevant to this action. If the CAT Fund did so, it violated its own regulation, and this court has no authority to direct the CAT Fund to violate the law again simply because the CAT Fund has done so in the past. Thus, because information regarding the CAT Fund's past prac-

5. We did not grant oral argument on this issue.

tice with respect to late surcharge payments does not appear reasonably calculated to lead to the discovery of any discoverable matter, we deny [Lloyd's] motion to compel discovery.

*Lloyd, supra,* slip op. at 4. We agree with the sound rationale of the Commonwealth Court on this issue.

### Bad Faith Claim

█ Finally, Lloyd posits that the Commonwealth Court erred in denying his request to amend his Petition for Review to assert an additional claim of bad faith against the CAT Fund.[6] Specifically, he alleged in his request to amend that internal CAT Fund e-mails disclosed that the CAT Fund's decision to deny coverage for Dr. Lerner was motivated by improper considerations such as: (1) the existence of other insurance for Lloyd; and (2) a desire to keep health care providers "diligent and honest." R.R. at 69a. Having determined that the regulation at 31 Pa.Code § 242.17(b) was valid and that the CAT Fund acted within the confines of this regulation, the issue of whether a claim of bad faith could be maintained against the CAT Fund is moot because the CAT Fund cannot be deemed to have acted in bad faith for acting pursuant to a valid regulation. What Lloyd purports to be the rationale of the CAT Fund for denying coverage to Dr. Lerner is of no moment because the CAT Fund has no obligation, or authority, to deviate from its duly enacted, valid regulations.

### CONCLUSION

We find that 31 Pa.Code § 242.17(b) is a valid exercise of the CAT Fund's authority to issue rules and regulations "regarding the establishment and operation of the fund including all procedures and the levying, payment and collection of the surcharges[,]" 40 P.S. § 1301.701(e)(11) (repealed), and that the actions of the CAT Fund in this case complied with

6. The CAT Fund argues in response to this contention that a party can never maintain a bad faith claim against it. However, because the Commonwealth Court did not address this issue, we leave it for another day when it is more squarely presented.

the valid regulation. Accordingly, we affirm the Order of the Commonwealth Court.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice NIGRO files a dissenting opinion in which Justice SAYLOR joins.

Justice NIGRO, dissenting.

As I do not agree with the majority that 31 Pa.Code § 242.17(b) was a valid exercise of the CAT Fund's rule-making authority, I respectfully dissent.

According to 31 Pa.Code § 242.17(b), "[a] health care provider failing to pay the surcharge or emergency surcharge within the time limits prescribed will not be covered by the Fund in the event of a loss." In *Dellenbaugh v. Medical Professional Liability Catastrophe Loss Fund*, 562 Pa. 558, 756 A.2d 1172 (2000), this Court applied that very regulation to deny coverage to a physician who had failed to pay his surcharge. The majority now asserts that *Dellenbaugh* "did not present this Court with the opportunity to address whether 31 Pa.Code § 242.17(b) was a valid exercise of the CAT Fund's rule-making authority." Op. at 1234. However, in my view, *Dellenbaugh* presented just that issue and the majority, by denying coverage to a physician who had failed to pay his surcharge, necessarily concluded that the regulation allowing such a denial was valid. In fact, I dissented in *Dellenbaugh*, specifically opining that coverage should have been provided because 31 Pa.Code § 242.17(b) was not in accord with the plain language of the Health Care Services Malpractice Act, 40 P.S. §§ 1301.701–1301.706, and was therefore invalid and unenforceable. 756 A.2d at 1176–78 (Nigro, J., dissenting). Nevertheless, as the majority now asserts that *Dellenbaugh* did not resolve the issue of the regulation's validity, I have no choice but to dissent again, based on the reasons I have already set forth in my *Dellenbaugh* dissent.

In spite of my disagreement with the majority on the question of the regulation's validity, I nonetheless concur in its

conclusion that the trial court did not err in refusing to permit Lloyd to amend his Petition for Review to assert a claim of bad faith against the CAT Fund. As I believe that *Dellenbaugh* established the validity of 31 Pa.Code § 242.17(b), and the CAT Fund acted in accordance with the plain language of that regulation, there was simply no basis on which the CAT Fund could be found to have acted in bad faith, and any amendment of the Petition to assert a bad faith claim would therefore have been futile.

For the foregoing reasons, I would reverse the order of the Commonwealth Court insofar as it concluded that 31 Pa.Code § 242.17(b) was a valid exercise of the authority of the Director of the CAT Fund, but affirm that order insofar as it prohibited Lloyd from pursuing a bad faith claim against the CAT Fund.

Justice SAYLOR joins in the dissenting opinion.