# McGuckin v. E.J. Kirkpatrick Consulting Inc.

C.P. of Carbon County, no. 03-3164.

*Gerald F. Strubinger,* for plaintiffs.
*Michael T. Foster,* for defendants.
*John W. Dornberger,* for claimant Westfield Ins. Co.

NANOVIC, *J.,* October 19, 2004—The defendants, E.J. Kirkpatrick Consulting Inc. and Ericka Kirkpatrick, have appealed from our order dated July 27, 2004, dismissing defendants' objections to the claimant's, Westfield Insurance Company's, discovery requesting the production of various documents and directing defendants to comply with the request within 30 days. This opinion is in support of that order. See Pa.R.A.P. 1925(a).

## PROCEDURAL AND FACTUAL BACKGROUND

In February 2003, the plaintiffs, Steven McGuckin and Nancy D. McGuckin, his wife, and Rodney Gilbert, learned that their property at 1542 Strauss Valley Road, Lehighton, Carbon County, Pennsylvania, was contaminated with heating oil leaking from an above-ground storage tank located on the property. (Plaintiffs' complaint, paragraph 5.) Plaintiffs notified their homeowners insurance company, Westfield, of this problem, whereupon Westfield contracted with defendants to provide environmental services, including, but not limited to, soil testing and analysis, disposal of contaminated soil and water, and final grading and restoration of the property. (Plaintiffs' complaint, paragraphs 6 and 7; Westfield's complaint, paragraph 35.)

At some point in performing these services, defendants allegedly billed and demanded payment from plaintiffs for work which was not completed. (Plaintiffs' complaint, paragraph 9.) When defendants did not receive payment, defendants ceased work, leaving plaintiffs' property in a partially excavated and unfinished condition. (Plaintiffs' complaint, paragraphs 9 and 10.) Plaintiffs next filed suit against defendants at the district justice level and obtained a judgment against the defendants in the amount of $6,500. It is this judgment which has been appealed by defendants.

In plaintiffs' complaint filed in response to the appeal taken by the defendants, plaintiffs assert a claim for breach of contract pursuant to the agreement between Westfield and defendants for defendants to clean up plaintiffs' property. (Plaintiffs' complaint. paragraphs 7, 13, 15, 16 and 18.) Thereafter, on December 9, 2003, defen-

dants, through their counsel, Michael T. Foster, Esquire, filed a petition for interpleader alleging, in pertinent part, that the contractual obligations on which plaintiffs' suit is based arise out of the contract between the defendants and Westfield; that plaintiffs are, at best, third-party beneficiaries of that contract; and that Westfield as the actual party to the contract has made, or is expected to make, a demand upon the defendants as a result of which defendants will be subjected to double or multiple liability upon the same claim asserted by the plaintiffs. (Petition for interpleader, paragraphs 11-15.)

Upon receipt of defendants' petition, we issued a rule on plaintiffs to show cause as to why the relief requested by the defendants should not be granted. This rule was made absolute on January 20, 2004, after the return date of the rule had expired and no response had been received. Our order making the rule absolute, in the form provided by Pa.R.C.P. 2304, directed Westfield as a party plaintiff to file a complaint within 20 days after being served with copies of the petition for interpleader and plaintiffs' complaint.

On March 31, 2004, Westfield filed its complaint against defendants. In this complaint, Westfield alleges, inter alia, that the contamination of plaintiffs' property by the heating oil released from the above-ground storage tank was a reportable release as defined by the Pennsylvania Department of Environmental Protection (DEP) (complaint, paragraph 21); that on or about February 2003, Westfield entered an agreement with defendants for defendants to test, assess and clean up the contamination of plaintiffs' property (complaint, paragraph 35); that, pursuant to the agreement, defendants agreed to test

plaintiffs' property to determine the area and extent of the contamination and to develop a plan for the removal and cleanup of the contamination, all to be completed in accordance with the requirements of DEP (complaint, paragraphs 23, 25, 27, 28 and 39); that part of the services defendants agreed to provide included the preparation of a report or assessment of the site contamination to be submitted to Westfield and DEP for review and evaluation so as to ensure compliance with DEP's regulatory requirements (complaint, paragraph 39); that defendants have failed to provide the results of its soil sampling and assessment of the project site to either Westfield or DEP and have further failed to provide either with a closure report or assessment (complaint, paragraphs 45-47); that Westfield believes defendants have not properly identified or classified contaminated soil on plaintiffs' property and that, in consequence, the amount of soil defendants excavated from plaintiffs' property, an amount in excess of 600 tons, exceeds that required to remediate the property (complaint, paragraphs 50 and 51); that Westfield will be required to employ additional environmental consultants to correct and complete work that defendants were to perform (complaint, paragraphs 53 and 54); that defendants falsely assured Westfield they were capable and competent to provide environmental services which they in fact were not qualified to perform and that, in billings to Westfield, defendants misrepresented the true qualifications of the persons actually performing such services (complaint, paragraphs 63-76); and that, to date, Westfield has paid defendants in excess of $133,000 for services performed at the project site (complaint, paragraph 33). Westfield's complaint asserts claims for breach of contract (Count I), breach of war-

ranty (Count II), fraud and misrepresentation (Count III), breach of the implied duty of good faith and fair dealing (Count IV), and replevin (Count V), the latter requesting copies of the reports and analyses for which defendants billed Westfield and which Westfield claims to have paid.

On March 11, 2004, Westfield served a request for production of documents upon defendants to which defendants objected on or about April 16, 2004. Westfield's request sought production of, among other things, all field notes, sample location drawings, waste manifest acceptance documents, soil and groundwater test results with supporting documentation, and draft reports. With the exception of responding that they did not know what exhibits or experts would be introduced at the time of trial, defendants' response to every document request read as follows:

"This inquiry is objected to as being, but not limited to, well beyond the scope of the complaint and/or its pleadings in this matter. While it is acknowledged that plaintiff Westfield Insurance has filed its own complaint in this matter, it was filed without leave of court and is therefore improper under the Rules of Civil Procedure."

Westfield next filed a motion to strike defendants' objections and to compel responses to Westfield's request for production of documents on May 7, 2004. In this motion, Westfield asserted that the documents sought are material and relevant to each of its claims against the defendants.

A rule to show cause with respect to Westfield's motion was issued on May 11, 2004, and, on June 1, 2004, defendants filed their responses to the motion. Defen-

dants' answer does not challenge the material facts of the motion but argues that the claims made by Westfield in its complaint are beyond the scope of those contained in plaintiffs' complaint and are therefore improper, and that Westfield seeks through the discovery process to obtain and to benefit from the work and services provided by defendants without paying for this work. In its motion, Westfield alleges that because it has incurred and will continue to incur costs and fees in retaining another environmental consultant to complete the work defendants were to perform, and in order to ascertain the full measure of its damages as well as to avoid duplication of services and mitigate its damages, it is important that it be permitted to obtain and review the documents it has requested to determine exactly what work was performed by defendants and what work remains to be done. (Motion to compel, paragraphs 27-29.)

Hearing/argument on Westfield's motion was originally scheduled for July 2, 2004. Defendants requested a continuance of this date, which request was opposed by plaintiffs and Westfield. By order dated June 30, 2004, we granted defendants' continuance request and, in the same order, rescheduled the matter to be heard on July 27, 2004, at 9 a.m.

On July 27, 2004, counsel for the plaintiffs and for Westfield appeared in court; defendants' counsel did not. Following argument, and after noting that defendants had failed to file any legal memorandum in support of their opposition to the motion, in our order dated the same date we granted the motion and directed defendants to provide full and complete responses to Westfield's document requests within 30 days. Defendants have filed a

timely appeal of this order to the Pennsylvania Superior Court.

## DISCUSSION

### A. *Appealability of Order*

Preliminarily, we seriously question the appealability of the order in question. Under the final judgment rule, a party aggrieved by a decision in a civil case has no right to appeal that decision until such time as final judgment as to all claims and as to all parties has been entered. Pa.R.A.P. 341(a). Generally, discovery orders are not appealable as they do not dispose of the litigation. *Makarov v. Lukenda,* 856 A.2d 163, 164 (Pa. Super. 2004); see also, *PECO Energy Co. v. Insurance Company of North America,* 852 A.2d 1230, 1233 (Pa. Super. 2004).

The order appealed from is one directing compliance with discovery requests and is clearly non-dispositive of the case. Defendants argue, however, that the appeal falls within the "collateral order" exception to the final judgment rule. This exception has been codified in Pa.R.A.P. 313. For an order to fall within the collateral order doctrine and become immediately appealable, all of the following must exist: (1) the order appealed from must be separable from, and collateral to, the main cause of action; (2) the right involved must be too important to be denied review; and (3) the question presented must be such that if review is postponed until a final judgment is rendered in the case, the claimed right will be irreparably lost. Pa.R.A.P. 313(b); see also, *Makarov v. Lukenda,* 856 A.2d at 164. Only if an issue can be decided without

reference to the underlying claim is it separable from, and collateral to, the main cause of action. *Ben v. Schwartz,* 556 Pa. 475, 729 A.2d 547, 551-52 (1999) (holding also that the second prong of the test involves a determination that the issue is important not only to the particular parties but to rights which go beyond the particular litigation at hand and involve interests deeply rooted in public policy which should not be compromised notwithstanding the efficiency interests underlying adherence to the final judgment rule).

In this case, there is no claim that the information sought is protected by the attorney-client, work product or trade secret privileges. Cf. *PECO Energy Co.,* 852 A.2d at 1233 ("Appellate review is appropriate when a colorable claim of privilege is asserted."). Instead, the information sought and which is objected to by defendants is inextricably intertwined not only with the issue of whether defendants have breached their agreement with Westfield, but also with the extent and nature of any damages which may have been sustained by such breach. Since the agreement on which Westfield premises its breach of contract claim against defendants is the same agreement on which plaintiffs base their claim of breach of contract, and since the claim for damages of both plaintiffs and Westfield, at least as alleged in defendants' petition for interpleader, overlaps, it logically follows that the information sought by Westfield with respect to its claim for breach of contract is, if not directly "relevant to the subject matter involved" in both claims, is at least "reasonably calculated to lead to the discovery of admissible evidence" in both. Pa.R.C.P. 4003.1.[1] Con-

---

1. To the extent defendants argue that the granting of the discovery order vis-à-vis Westfield's replevin claim in a decision "on the merits"

sequently, the order on appeal is neither separable from, nor collateral to, the main cause of action and does not meet the first prong of the collateral order test. As such, defendants have appealed from a non-appealable interlocutory order. See also, *Makarov v. Lukenda, supra* (holding that order compelling discovery of information regarding the extent of plaintiff's injuries in personal injury litigation pertains directly to the ultimate issue in the underlying action and is therefore interlocutory and not appealable).[2]

---

because, in the context of this claim, the granting of the discovery is co-extensive with the granting of relief on the merits, the issue is moot: On October 7, 2004, Westfield praeciped to discontinue the replevin claim.

2. Our assessment of the viability of defendants' appeal does not, in any way, effect our jurisdiction to act on defendants' preliminary objections to Westfield's complaint or defendants' motion to stay all proceedings pending the outcome of the appeal. While Pa.R.A.P. 1701(a) provides that after an appeal is taken, "the trial court ... may no longer proceed further in the matter," this general prohibition is limited by Pa.R.A.P. 1701(c) to the particular claim "involved in [the] appeal." *Richards v. Trimbur,* 374 Pa. Super. 352, 543 A.2d 116 (1988). Therefore, should it later be determined that our order dated July 27, 2004, meets the criteria for being a collateral order, this conclusion does not deprive us of jurisdiction to rule on all matters not involved in the appeal. *Rosen v. Rosen,* 520 Pa. 19, 24, 549 A.2d 561, 564 (1988) ("The purpose of Rule 1701(c) is to prevent appeals of collateral issues from delaying the resolution of the basic issues where the proceeding below can continue without prejudicing the rights of the part[ies] seeking the interim review."). We will, however, defer ruling on Westfield's motion for sanctions as to the discovery order until after defendants' appeal is disposed of by the Superior Court.

## (B) *Propriety of Discovery Requests*

Addressing next the merits of the defendants' appeal, in *PECO Energy Co. v. Insurance Company of North America,* the court, in language relevant to these proceedings, stated the following:

"The trial court is responsible for '[overseeing] discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovering of matters allowed by the Rules of Civil Procedure.' *Hutchison v. Luddy,* 414 Pa. Super. 138, 606 A.2d 905, 908 (1992). (citation and internal quotations omitted) Pennsylvania Rule of Civil Procedure 4003.1 states:

*"Rule 4003.1 Scope of discovery generally. Opinions and contentions*

"(a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . .

"(b) It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

"Pa.R.C.P. 4003.1(a)(b). See also, *Lloyd v. CAT Fund,* 573 Pa. 114, 821 A.2d 1230, 1236 (2003). Generally, discovery 'is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being

tried.' *George v. Schirra,* 814 A.2d 202, 205 (Pa. Super. 2002). (citations omitted)" 852 A.2d at 1233.

It is also not ground for objection that defendants may be entitled to additional payment for the work they performed under the contract with Westfield. Whether the contract was breached by either side and what damages have been sustained, if any, is directly at issue in this litigation. The documents Westfield requests are clearly relevant to these issues. For defendants to condition production of the documents on additional payments from either Westfield or the plaintiffs is in a very real sense placing the cart before the horse: defendants may or may not be entitled to additional payments depending not only on what the parties agreed to but also on whether defendants breached that agreement. Moreover, production of the documents requested by Westfield will in no way jeopardize defendants' claim for any damages to which they may be entitled.

As already discussed, the information Westfield seeks is relevant not only to its own claim for breach of contract but also to that of plaintiffs'. To the extent defendants contend Westfield's claims are inappropriate to this litigation, that Westfield's claims are limited by amount and type to those asserted by plaintiffs, defendants appear to forget that they are the ones who, by their interpleader, invited the claims.[3]

---

3. We are aware of no procedural law or rule that required Westfield, as asserted in defendants' objections to Westfield's discovery, to seek leave of court before filing its complaint; in fact, the rules are to the contrary. Pa.R.C.P. 2304 and 2309.

Rule 2303(a)(1) reads, "[t]he petition for interpleader shall allege . . . that a claimant not a party of record has made or is expected to make a demand upon the defendant as a result of which the defendant is or may be exposed to double or multiple liability to the plaintiff and to such claimant as to *all or any part of* the claim asserted by plaintiff." Pa.R.C.P. 2303(a)(1). (emphasis added) This language, referring to the requirements of the allegations in the petition for interpleader, is not included in Rule 2309, which governs the statement of claim. Rule 2309 states that "each claimant interpleaded shall file a statement of claim against the defendant and any money or property paid or delivered by said defendant pursuant to an order of the court." Pa.R.C.P. 2309(a). The form of this order is provided for in Rule 2304. In accordance with such order, the claimant is made a party plaintiff to the proceeding and is enjoined from commencing or further prosecuting any action in any court against the defendant "to enforce *in whole or in part* any claim against the [defendant] set forth in [the petition for interpleader], except as a party to the [interpleader] action." Pa.R.C.P. 2304. (emphasis added) These rules when read in pari materia in no way act as a bar to claimant asserting additional claims arising out of the same subject matter or additional damages against the defendant in the statement of claim. Rather, Rule 2303(a) only acts as a bar to the granting of a petition for interpleader if the defendant fails to allege the potential for multiple liability.

More to the point, the essential element for interpleader is that "the respective claims are [in whole or in part] mutually inconsistent and if enforced in separate actions

would expose the defendant to double liability in regard to the same matter." *McCrady-Rodgers Co. v. Housing Corporation,* 360 Pa. 275, 279, 61 A.2d 866, 868 (1948). However, "[i]nterpleader may be granted . . . even though the same claim is not asserted or the same relief is not demanded by both claimants." *Id.* at 279, 61 A.2d at 868; see also, Pa.R.C.P. 2306(c)(3).

This essential element for interpleader has been met in this case and was, in fact, the very basis upon which this court relied in granting defendants' request to interplead Westfield. Both plaintiffs' claims and those of Westfield for breach of contract appear from the pleadings to be premised on the same contractual obligations of defendants created by the contract with Westfield, and to avoid inconsistent and contradictory results—and the possibility of duplicative awards—were properly interpleaded together.[4] At this point in the proceedings, although the claims of plaintiffs and Westfield for damages are believed to overlap, it is uncertain whether they

---

4. On August 9, 2004, more than four months after the filing of Westfield's complaint, and after our order dated July 27, 2004, which is the subject of defendants' appeal, defendants filed objections to Westfield's complaint. Argument on these objections was held on September 29, 2004. At that time, defendants argued that because plaintiffs' claims were in trespass and Westfield's for breach of contract, trespass and replevin, Westfield violated the permissible scope of claims in an interpleader proceeding. This argument ignores the explicit language of plaintiffs' complaint asserting that their claims are for breach of contract (plaintiffs' complaint, paragraphs 18 and 19) and is inconsistent with defendants' own petition for interpleader in which defendants aver that the contract plaintiffs claim has been breached is that between defendants and Westfield and, that for this reason, plaintiffs' claims are inconsistent with or duplicative of those made by Westfield, thereby exposing defendants to double or multiple liability for the same claim. (Petition for interpleader, paragraphs 12 and 15.)

are identical. Regardless, to the extent both arise out of the same underlying conduct of defendants which gives rise to damages to both plaintiffs and Westfield for breach of contract, some of which overlap and some of which may not, once interpleader is granted, we believe principles of judicial economy and efficiency and fairness to the parties permits all such damages to be litigated in one proceeding. See *Smith v. Gaut,* 60 D.&C. 528, 531 (Wash. Cty. 1947) ("It is in the public interest as well as in the private interest of the defendant to avoid such additional suits when it is possible to do so by interpleading the adverse claimant in the suit first brought.").[5]

---

5. In response to our order pursuant to Pa.R.A.P. 1925(b) directing defendants to file a concise statement of the matters complained of on appeal, defendants have filed a rambling, inaccurate and imprecise statement which contains, in part, matters not of record and which obfuscates, rather than defines, the issues on appeal. We believe the foregoing opinion accurately and properly focuses on the real issue: whether Westfield's request for discovery is relevant to the claims properly raised in these proceedings.

To the extent defendants allege they were not notified of, or provided an opportunity to participate in, the argument on Westfield's motion to compel discovery, the record is to the contrary. The same order of June 30, 2004, which granted defendants' request to continue the argument/hearing rescheduled for July 2, 2004, also rescheduled the matter for July 27, 2004. Therefore, the defendants' claim that they received notice of the granting of the continuance but not of the new date is misleading.

When the case was first called for argument on July 27, 2004, and it was learned that counsel for defendants was not present, the court had a member of its staff contact Attorney Foster's office to determine the reason for his absence. In the meantime, the case was placed at the end of the list of cases scheduled for argument. Prior to recalling the case, the court was advised that Attorney Foster would not be attending due to illness and that Attorney Clever, who apparently had been monitoring Attorney Foster's mail during the previous week, reported that no notice of the rescheduled proceedings had been received dur-

## CONCLUSION

In accordance with the foregoing, we respectfully request that our order denying defendants' objections to

---

ing this period. Prior to that time period, however, the prothonotary's dockets reflect that notice of the rescheduled proceedings was forwarded to Attorney Foster's office, as well as to counsel for the plaintiffs and Westfield. This notice, according to the prothonotary's records, was mailed to Attorney Foster on July 9, 2004, almost three weeks prior to the scheduled proceeding on July 27, 2004, and prior to the date Attorney Clever indicated he was checking Attorney Foster's mail.

As indicated in the text, counsel for both plaintiffs and Westfield were present for the scheduled argument/hearing and obviously received the notice sent by the prothonotary's office. Moreover, no evidence was taken or hearing held in Attorney Foster's absence. Instead, an abbreviated argument was made by Westfield's counsel and the matter was then taken under advisement. The motion was decided solely on the undisputed facts of record with respect to Westfield requesting and defendants objecting to discovery, the issue as to the propriety of the discovery being one of law.

Westfield's motion to compel filed on May 7, 2004, was accompanied by a memorandum of law as required by local rule. Local rule also requires that when a motion or petition is opposed, the answer to the petition also be accompanied by a memorandum of law. Rule L206.1(4)(E). In this case, defendants' answer filed on June 1, 2004, was not accompanied by a memorandum of law. Pursuant to local rule, a party who fails to file a brief as required by the rules is prohibited from arguing. Rule L211(3). In practice, this court has been lenient in the enforcement of the rule when no prejudice occurs to the opposing party. In this case, the court did not consider defendants' failure to file a responsive memorandum of law or to appear at the scheduled proceeding as a waiver of the issue. Rather, the issue was decided as an issue of law in accordance with the law, as we understand it.

As to questions of law, defendants' counsel refers to no cases which hold that where a party has been provided an opportunity to brief an issue, argument in person is a concomitant requirement of due process. Under these circumstances, we do not believe we abused our discretion or violated any rights of defendants by deciding a question of

Westfield's discovery and directing defendants to comply with this discovery be affirmed.

---

law on the basis of the undisputed matters of record. We further fail to see how defendants have in any manner been prejudiced by the procedure followed in ruling on Westfield's motion to compel.