## HIGHLAND PARK CARE CENTER, Petitioner

### v.

## MEDICAL CARE AVAILABILITY AND REDUCTION OF ERROR FUND, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2011.

Decided Nov. 17, 2011.

Publication Ordered Jan. 31, 2012.

Justin G. Weber, Harrisburg, for petitioner.

Tawny K. Mummah, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McGINLEY.

The Medical Care Availability and Reduction of Error Fund (MCARE Fund) has filed Exceptions to the recommended decision by the Commonwealth of Pennsylvania's Department (Department) of Insurance Hearing Examiner who found that Highland Park Care Center (Highland Park) timely paid its "MCARE Assessment" and was eligible for coverage under the Medical Care Availability and Reduction of Error Act (MCARE Act).[1]

### MCARE Assessments

The MCARE Fund is funded by assessments paid by participating health care providers, which are collected by primary insurance carriers and remitted to the MCARE Fund. Section 712(d) of the MCARE Act, 40 P.S. § 1303.712(d)(1). The MCARE Fund notifies those approved Insurers of the MCARE Assessments each year. The MCARE Fund communicates directly with the approved Insurers, but

---

1. Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. §§ 1303.101–1303.910, created the MCARE Fund as a statutory insurer providing medical malpractice coverage in excess of the primary layer of coverage purchased by the health care physician or hospital. The MCARE Fund replaced the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, 40 P.S. §§ 1301.101–1006.

does not notify the individual health care providers of their MCARE Assessments. Section 712(d) of the MCARE Act, 40 P.S. § 1303.712(d)(2).

The applicable regulations, 31 Pa.Code § 242.6(a)(3), require that MCARE Assessments be received by the MCARE Fund *within 60 days* from the effective date of a health care provider's primary insurance policy. The regulations further provide that any provider who fails to timely pay the assessment will not be covered by the MCARE Fund in the event of a loss. 31 Pa.Code § 242.17(b).

Here, the issue is whether Highland Park was eligible for MCARE Funds when it paid timely its Assessment but, unbeknownst to it, its primary insurance carrier, Campmed Casualty and Indemnity Company (Campmed), did not remit the Assessment to the MCARE Fund until more than 60 days after the effective date of Highland Park's primary insurance policy.

Campmed billed Highland Park for its MCARE Assessment on August 31, 2005. On September 16, 2005, Campmed received Highland Park's payment. On September 22, 2005, the Estate of Madeline Scampone (Scampone) brought a medical malpractice action against Highland Park. Highland Park first had notice of the lawsuit on October 7, 2005. On March 29, 2006, MCARE received a Form 216 which included Highland Park's Assessment payment. On April 5, 2006, Campmed submitted a request for MCARE excess coverage for Highland Park for the Scampone lawsuit. MCARE denied coverage and asserted the Assessment payment was untimely.

## Hearing Examiner's Recommended Decision

The Hearing Examiner concluded that given the unique circumstances presented, where the untimeliness was the insurance carrier's fault, Highland Park's Assessment should be considered timely because it complied with the prescribed timelines. She recommended that the MCARE Fund's determinations be reversed. The Hearing Examiner also noted that the late Assessment was the result of the MCARE Fund's "collection and remittance" system whereby medical care providers are directed to pay the carrier but they are not warned or otherwise notified of a carrier's failure to remit the assessment on time.

## MCARE Fund's Exceptions

The MCARE Fund argues that the Hearing Examiner erred because her proposed decision contradicts the statute, the regulations and case law. This Court must deny the Exceptions.

The MCARE Fund's interpretation ignores the plain distinction in the regulations between "payment" of the MCARE Assessment by a health care provider and "remittance" of the Assessment to the MCARE Fund by the approved Insurer. The MCARE Fund seeks to deny coverage to Highland Park based on the timing of the approved Insurer's remittance, not Highland Park's payment of its MCARE Assessment. The plain language of the MCARE's regulations directs that health care providers "pay" MCARE Assessments to Approved Insurers. 31 Pa.Code § 242.17(b). The MCARE Assessment is then "remitted" to the MCARE Fund by the approved Insurer, not by the health care provider. 31 Pa.Code § 242.6(a)(3).

A health care provider may not make a payment directly to the MCARE Fund and the MCARE Fund has no form for *a health care provider* to remit its MCARE Assessment to the Fund. Only Approved Insurers communicate with MCARE and remit the MCARE Assessment to

MCARE on a "Form 216." 31 Pa.Code § 242.6(a)(3).

Here, Highland Park followed the MCARE Fund's procedures. It timely paid its MCARE Assessment to the approved Insurer, Campmed. And, it made that payment within 60 days of the effective date of its policy. The MCARE Fund concedes that Campmed received the payment from Highland Park "with ample time to submit it to MCARE." MCARE Fund Brief at 4.

MCARE Fund cites three cases, none of which are similar to the facts presented here. In *Dellenbaugh v. Pennsylvania Medical Professional Liability Catastrophe Loss Fund*, 562 Pa. 558, 756 A.2d 1172 (2000), our Supreme Court held that the Medical Professional Liability Catastrophe Fund (CAT Fund) was not liable for excess liability coverage in a medical malpractice action because the surgeon did not pay the required annual surcharges. There, it was undisputed that beginning in January 1992, Dr. Azurin stopped paying the annual surcharges to the CAT Fund. He performed abdominal surgery on a patient on January 13, 1993, who later died due to the doctor's negligence. The Supreme Court held that since Dr. Azurin failed to pay the surcharges, he was not entitled to the statutory excess coverage. Unlike Dr. Azurin, Highland Park not only paid its MCARE Assessment, it paid the Assessment in a timely manner in the time period directed by the MCARE Fund.

Similarly, in *Lloyd v. Pennsylvania Medical Professional Liability Catastrophe Loss Fund*, 573 Pa. 114, 821 A.2d 1230 (2003), Dr. Lerner accidentally administered excessive doses of intravenous sedation to a patient during routine surgery which caused her death. The hospital where Dr. Lerner worked was responsible for paying Dr. Lerner's insurance premiums and CAT Fund surcharges. The hospital however failed to pay Dr. Lerner's surcharges by the required date. The CAT Fund's denial of coverage was upheld by this Court and affirmed by our Supreme Court. Again, this case did not involve a health care provider who paid its MCARE Assessment in the time period and in the manner prescribed by the regulations.

The Hearing Examiner's recommended decision is based on an accurate interpretation of the regulations. This Court agrees with the Hearing Examiner's conclusion that "only MCARE has the statutory and regulatory authority to direct the collection of [MCARE] Assessments." Proposed Decision at 18. Through its own procedures, the MCARE Fund provided for remittance from the approved Insurer only, not from the medical care providers.

The MCARE Fund has provided no sound reason why Highland Park, which undisputedly complied with all of MCARE's laws and regulations, should be penalized for the actions of an approved Insurer which failed to timely remit payments.

The MCARE Fund's Exceptions to the Hearing Examiner's Proposed Decision are denied.

### ORDER

AND NOW, this 17th day of November, 2011, the Exceptions of the MCARE Fund to the Hearing Examiner's Proposed Decision in the above-captioned matter are hereby DENIED. Judgment is entered in favor of Highland Park Care Center.