**Allen S. GABROY, M.D., Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Medical Professional Liability Catastrophe Loss Fund and Pennsylvania Property and Casualty Insurance Guaranty Association, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 6, 2005.

Decided Nov. 15, 2005.

---

15. The Department's position would clog the Board's filing office for no good reason.

James J. McCarthy, Conshohocken, for petitioner.

Zella Smith Anderson and Tawny K. Mummah, Harrisburg, for respondent, Medical Professional Liability Catastrophe Loss Fund.

Lise Luborsky, Philadelphia, for respondent, Pennsylvania Property and Casualty Insurance Guaranty Association.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and SIMPSON, Judge.

OPINION BY President Judge COLINS.

Before this Court in its original jurisdiction is a motion for summary judgment filed on January 26, 2005, by Allen S. Gabroy, M.D. against the Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund (hereinafter "the Fund"),[1] which in turn joined the Pennsylvania Property and Casualty Insurance Guaranty Association (hereinafter "the Guaranty Association")[2] as an additional respondent. Also before this Court are cross-motions for summary judgment filed by the Fund and by the Guaranty Association.

A medical malpractice action was brought by Dennis and Lynn Hocker on July 14, 1997, against Petitioner, Dr. Gabroy, Dr. William J. Manella, and Suburban Surgical Associates. Gabroy, Manella,

---

1. On March 20, 2002, the Medical Professional Liability Catastrophe Loss Fund (CAT Fund) became known as the Medical Care Availability and Reduction of Error Fund, pursuant to Act 13 of 2002. The Medical Care Availability and Reduction of Error Fund is the successor in interest to the CAT Fund and will hereinafter be referred to as "the Fund." It is a statutory excess carrier providing additional excess medical malpractice insurance coverage to the extent that a health care provider's liability exceeds its basic coverage insurance in effect at the time of an occurrence. *Storms v. O'Malley,* 779 A.2d 548, 553–54 n. 1 (Pa.Super.2001), *petition for allowance of appeal denied,* 570 Pa. 688, 808 A.2d 573 (2002).

2. The Guaranty Association was created by the Act of December 12, 1994, P.L. 1005, 40 P.S. §§ 991.1801–991.1820 (Guaranty Association Act), to provide a means of paying covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims, and to prevent claimants or policyholders from incurring financial loss as a result of an insurer's insolvency. *Storms,* 779 A.2d at 554 n. 2.

and Suburban Surgical each had separate basic coverage insurance with Physicians' Insurance Company (PIC) in the amount of $200,000.00 per occurrence.

On February 9, 2001, a jury found Dr. Gabroy jointly and severally liable along with Dr. Manella and Suburban Surgical Associates in the amount of $665,000.00 plus delay damages in the amount of $142,467.00 for a total judgment amount of $807,467.00. The jury found Dr. Gabroy 70% negligent, Dr. Manella 20% negligent, and Suburban Surgical 10% negligent, but the plaintiffs chose to collect the entire judgment against Dr. Gabroy. In *Baker v. AC & S, Inc.*, 562 Pa. 290, 299, 755 A.2d 664, 669 (2000), the Supreme Court stated, "the plaintiff may recover the entire damages award from only one of the joint tortfeasors. That joint tortfeasor's recourse for paying more than its proportionate share of the verdict is to sue the nonpaying joint tortfeasors in contribution."

█ On January 21, 1998, PIC was declared insolvent, and the Guaranty Association paid $200,000.00 to plaintiffs on behalf of Dr. Gabroy, an amount equal to his basic coverage policy limits, and paid $100,000.00 to plaintiffs on behalf of Dr. Manella, for a total payment of $300,000.00. The Fund paid plaintiffs $334,868.00 on behalf of Dr. Gabroy, an amount equal to his percentage of causal negligence attributed by the jury, or seventy percent (70%), plus 70% of delay damages and post-judgment interest less the amounts paid by the Guaranty Association for Dr. Gabroy.

On January 26, 2005, Dr. Gabroy filed a motion for summary judgment averring that the Fund is responsible for indemnifying him up to $1 million and that therefore, he is entitled to have the Fund pay, out of the remaining unexhausted Fund statutory excess coverage, the balance of plaintiff's verdict, along with paying delay damages and post-judgment interest, above the amount paid by the Guaranty Association. Dr. Gabroy argues that because the plaintiffs are attempting to collect the entire verdict amount, not just his 70% share of causal negligence as determined by the jury, along with delay damages, solely from him, said amount is within his liability limits with the Fund and that, accordingly, the latter is responsible for paying the entire judgment in excess of his basic insurance coverage. Dr. Gabroy, in support of his position that the Fund is estopped from renouncing its duty to pay the entire judgment against a health care provider found to be a joint tortfeasor, relies upon *Judge v. Allentown & Sacred Heart Hospital Center*, 506 Pa. 636, 487 A.2d 817 (1985), in which the Fund asserted its right to pay a claim in its entirety and then seek contribution from a non-settling joint tortfeasor. In this regard, Dr. Gabroy avers that the Fund is estopped from assuming a position inconsistent with its position in a previous action pursuant to *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission*, 808 A.2d 1044 (Pa.Cmwlth.2002), and that the Fund's attempt to limit its indemnification obligation only to the extent of his percentage of causal negligence as determined by the jury contravenes both legislative intent and the Health Care Services Malpractice Act.[3]

On February 17, 2005, the Fund responded to Dr. Gabroy's summary judgment motion and filed a cross-motion for summary judgment. The Fund takes is-

---

3. Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. §§ 1301.101–1301.1006 (Malpractice Act), repealed by the Act of March 20, 2002, P.L. 154. Now Medical Care Availability & Reduction of Error (MCARE) Act, §§ 1303.101–1303.907.

sue with what it avers to be Dr. Gabroy's following demands: (1) to pay delay damages and post-judgment interest attributable to the insolvent primary carrier and unpaid by the Guaranty Association for Dr. Gabroy; (2) to cover $33,000, plus delay damages and post-judgment interest attributable to the insolvent primary carrier and unpaid by the Guaranty Association for Manella; and (3) to cover $66,500 plus delay damages and post-judgment interest attributable to the insolvent primary carrier and unpaid by the Guaranty Association for Suburban Surgical. The Fund contends that both the Malpractice Act and common law do not require it to pay any of the aforementioned amounts from the unexhausted Fund statutory excess coverage on Dr. Gabroy. According to the Fund, it is required to pay only for claims that *exceed* the health care provider's primary coverage and is not required to *"drop down"* to pay a basic coverage obligation of the primary carrier.

On March 9, 2005, the Guaranty Association also filed a summary judgment motion. The Guaranty Association argues that it satisfied its entire obligation by paying the $300,000.00 cap, which applies "per claimant," not "per insured" or "per policy." The Guaranty Association further contends that the Claimant is the injured plaintiff while the insured of the insolvent insurer is not, and that the $300,000.00 cap is the maximum payable for the Hocker claim, regardless of the number of insureds. In this regard, the Guaranty Association maintains that the $300,000.00 cap also applies to interest, which should not be added to the Guaranty Association's covered claim obligation unless there is a judgment against the Association itself. Finally, the Guaranty Association argues that it is not necessarily responsible for satisfying an entire judgment, but rather functions as a limited source of recovery thereby providing a partial statutory remedy following the insolvency of a property and casualty insurer. All additional unpaid amounts, avers the Guaranty Association, are the responsibility of the liquidation estate.

In addressing the present summary judgment motions before the Court, we note that analogous issues arose in *Elliott–Reese v. Medical Professional Liability Catastrophe Loss Fund,* 805 A.2d 1253, 1257 (Pa.Cmwlth.2002), *affirmed,* 574 Pa. 705, 833 A.2d 138 (2003), wherein this Court stated:

> In considering the parties' respective applications, this Court notes that summary judgment may be granted only in those cases where the record clearly shows that there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). On a motion for summary judgment, the record must be viewed in a light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved in favor of the non-moving party. *Kapres v. Heller,* 536 Pa. 551, 640 A.2d 888 (1994). Applying the foregoing guidelines to the matter before us, we conclude that the Respondents have successfully established that no genuine issues of material fact exist in this matter and that they are entitled to judgment as a matter of law.

These guidelines governing summary judgment motions are applicable to the present Respondents who have established that no genuine issues of material fact remain in this matter and that therefore they are entitled to judgment as a matter of law. The same issue of whether the Fund can be held responsible to provide "drop down" coverage in the event an insurer becomes insolvent was also addressed by this Court in *Elliott–Reese.* Therein the

Court referred to *Storms*, 779 A.2d at 563, 567 (citations omitted and emphasis added and omitted), wherein our Superior Court reaffirmed:

> The courts of this Commonwealth have consistently held that "[w]here a remedy is provided by an act of assembly, the directions of the legislation must be strictly pursued and such remedy is exclusive." The instant Act [Malpractice Act] provides a clear and adequate remedy for a loss due to the insolvency of a property and casualty insurer. Some of the Act's stated purposes are: "[t]o provide a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." 40 P.S. § 991.1801(1) ...

> . . . .

█ [W]e must now determine whether the CAT Fund is required to "drop down" and cover the amount of the setoff so that the net cash settlement amount totals $801,358. The CAT Fund is statutorily liable to pay:

> ... all awards for loss or damages against a health care provider as a consequence of any professional liability action brought under this act to the extent any health care provider's share exceeds his basic insurance coverage.

40 P.S. § 1301.701(d)(amended 1996, No. 26, P.L. 776, No. 135, § 3, imd. effective).

The CAT Fund argues that it is responsible for only those sums above PPCIGA's liability limit of $200,000, and is neither required nor permitted to "drop down" and cover those sums which are statutorily offset from PPCI-GA's liability. *It is clear that the CAT Fund provides only excess coverage. In other words, it is liable to pay claims only when the health care provider's liability exceeds its basic coverage.* Presently, Dr. O'Malley's basic coverage of $200,000 provided by PPCIGA was exceeded by the settlement amount, and we are convinced that [the] CAT Fund is liable, by statute, only for that amount of the settlement in excess of PPCIGA's $200,000 limit of liability. *To require the CAT Fund to cover the amount of PPCIGA's setoff would, in effect require the CAT Fund to pay for claims below the limits of the health care provider's basic insurance coverage. This would violate the express terms of the Health Care Service Malpractice Act, 40 Pa. C.S.A. § 1301.701(d).*

The determinations set forth in *Storms* are applicable to the present matter and are consistent with the Fund's position that it is responsible for paying only for claims that *exceed* the health care provider's primary coverage and is not required to *"drop down"* to pay a basic coverage obligation of the now insolvent primary carrier. The above rationale is also consistent with the Guaranty Association's position that it is not responsible for satisfying an entire judgment, but rather provides limited recovery following the insolvency of a property and casualty insurer.

We conclude that both the Fund and the Guaranty Association are compliant with statutory requirements and with appellate precedent as set forth in *Elliott–Reese.* Accordingly, the Petitioner's application for summary relief is denied, and the Respondents' applications for summary relief are granted.

### ORDER

AND NOW, this 15th day of November 2005, the Petitioner's application for sum-

mary judgment in the above-captioned matter is denied, and the Respondents' respective applications for summary judgment are granted.