**Selim EL–ATTRACHE, M.D., Petitioner**

v.

**PENNSYLVANIA INSURANCE DEPARTMENT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 8, 2006.

Decided June 1, 2006.

Jon M. Lewis, Greensburg, for petitioner.

Cindy E. Sheaffer, Department Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Selim El–Attrache, M.D. (Dr. El–Attrache) appeals an order of the Pennsylvania Insurance Commissioner (Commissioner) denying his request to file an MCARE [1] Fund 2003 assessment abate-

---

1. Act of December 23, 2003, P.L. 237, *as amended*, formerly 62 P.S. §§ 1301–A—1310–A, repealed by the Act of December 22, 2005, P.L. 458, 40 P.S. §§ 1303.1101—1303.1115 (Act 13). Section 3 of Act 44 added Article XIII–A to the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101—1503. This dispute arose when Act 44 was in effect and is not affected by its subsequent repeal. The MCARE Fund was created "to pay claims against participating health care providers for losses or damages awarded in medical professional liability actions against them." 40 P.S. § 1303.712(a). Act 13 repealed and replaced the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. § 1301.701, thereby replacing the Medical Professional Liability Catastrophe Loss Fund with the MCARE Fund. 40 P.S. § 1303.712(b).

ment application after the statutory deadline.

In 2002, to replace the fund commonly known as the CAT fund,[2] the MCARE Act created the MCARE Fund to handle malpractice claims against participating health care providers.[3] The MCARE Fund was funded by an annual assessment on each participating health care provider.[4] In order to retain health care providers in Pennsylvania, Act 44 created the Retention Program to offer an abatement of between 50% and 100% of the MCARE Fund assessment that participating health care providers had to pay for calendar years 2003 and 2004.[5] A health care provider requesting abatement for a particular year had to file an application with the Department of Insurance (Department) no later than February 15th of the following year.[6] Because February 15th fell on a Sunday in 2004 and February 16th was a legal holiday, a health care provider had to file an application by February 17, 2004, in order to obtain abatement for 2003.[7]

On or about January 6, 2004, the Department posted on its MCARE Fund website the required abatement applications for the years 2003 and 2004. On February 9, 2004, the Department sent to the last known address of each health care provider licensed in the Commonwealth, including Dr. El–Attrache, a notice that all abatement applications for the 2003 MCARE Fund assessment had to be submitted no later than February 15, 2004. The letter also advised that the application had to be completed online, and advised that providers who did not have internet access could call the MCARE Fund's telephone "help line." MCARE also staffed a telephone hotline to assist health care providers who had difficulty in completing the

2. The CAT fund was more formally known as the Medical Professional Liability Catastrophe Loss Fund. The MCARE Fund assumed its money, rights, liabilities and obligations. *See* Section 712(b) of the MCARE Act, 40 P.S. § 1303.712(b).

3. Section 712(a) of the MCARE Act, 40 P.S. § 1303.712(a), provides:

There is hereby established within the State Treasury a special fund to be known as the Medical Care Availability and Reduction of Error Fund. Money in the fund shall be used to pay claims against participating health care providers for losses or damages awarded in medical professional liability actions against them in excess of the basic insurance coverage required by section 711(d), liabilities transferred in accordance with subsection (b) and for the administration of the fund.

4. *See* Section 1301–A of the Public Welfare Code, formerly 62 P.S. § 1301–A (defining assessment) and Section 712(d) of the MCARE Act, 40 P.S. § 1303.712(d) (describing assessments).

5. Section 1302–A of the Public Welfare Code, since repealed, provided at the relevant time:

There is hereby established within the Insurance Department a program to be known as the Health Care Provider Retention Program. The Insurance Department, in conjunction with the department, shall administer the program. The program shall provide assistance in the form of assessment abatements to health care providers for calendar years 2003 and 2004.

6. Section 1304–A(a) of the Public Welfare Code, since repealed, provided at the relevant time:

A health care provider may apply to the Insurance Department for an abatement of the assessment imposed for the previous calendar year. The application must be submitted by February 15 of the current calendar year and be on the form required by the Insurance Department.

7. 1 Pa.C.S. § 1908 provides:

Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.

application. The notice reminded applicants that in addition to completing the electronic application, they were required to forward to the Department a signed hard copy of the application, a signed certificate of retention and other supporting documentation.

On February 11, 2004, Dr. El–Attrache's administrative assistant, Jodi E. Knopsnider (Knopsnider), made a timely attempt to submit the online application on behalf of Dr. El–Attrache. The Department's computer program was designed to print a hard copy of the application on a health care provider's computer printer immediately after it was electronically submitted which was to be signed and mailed to the Department. Instead, Knopsnider's computer screen went white for a few seconds and then returned to the MCARE homepage, but no hard copy printed. Dr. El–Attrache's computer on which Knopsnider was working functioned properly both before and after February 11, 2004. After the homepage returned to the computer screen, Knopsnider assumed that the application was successfully submitted and went on to other duties. She did not verify with MCARE that the application was successfully submitted, and she did not submit a hard copy of the application, the retention pledge or the required supporting documentation. At no time did Dr. El–Attrache's office submit these items for the 2003 abatement application. However, Knopsnider later completed abatement applications on behalf of Dr. El–Attrache for the years 2004 and 2005 which were approved by the Department.

Knopsnider and Dr. El–Attrache did not become aware that their submission of the 2003 abatement application was unsuccessful until February 21, 2005, after which Dr. El–Attrache wrote a letter to the Department requesting that he be permitted to file his 2003 abatement application notwithstanding the statutory deadline of February 15, 2004.[8] As the request was in excess of a year past the statutory deadline and because the Department never received an electronic or hard copy of his 2003 abatement application, the request was denied. The Department also never received a copy of his declarations page for his policy or a fully executed copy of his Certificate of Retention as required by 62 P.S. § 1304–A. Additionally, neither Dr. El–Attrache nor Knopsnider ever telephoned the MCARE Fund hotline for assistance in making the abatement application.

Dr. El–Attrache then requested review by the Department's Administrative Hearings Office. In a submission to the presiding hearing officer, Dr. El–Attrache stated that he failed to submit his application on time because a technical problem occurred in the required electronic submission of the application. The parties agreed that the issue would be resolved on the facts contained in a joint stipulation of facts, and the matter was then sent to the Commissioner for a decision.

 Finding that Act 44 did not provide for flexibility or exceptions to the statutory deadline, and that Dr. El–Attrache was not entitled to an exemption from the deadline because there was no breakdown in the administrative process or other extraordinary circumstance that prevented him from making a timely submission of the 2003 abatement application, the Commis-

---

**8.** The problem came to light during February of 2005, when Dr. El–Attrache's malpractice insurance carrier sent him a bill for the 2003 assessment that did not acknowledge the abatement. Dr. El–Attrache then received abatement for 2004. MCARE was not aware that Dr. El–Attrache sought the abatement for the year 2003 until receiving the February 23, 2005 letter from him making this abatement request.

sioner affirmed the Department's denial and dismissed Dr. El–Attrache's request for review. This appeal followed.[9]

■ Act 44 established that applicants "must" timely file in order to be eligible for an assessment abatement, and that Act 44 did not give the Department any flexibility or discretion that would allow it to grant an assessment abatement to a health care provider that failed to comply with the statutory deadline. Section 3 of Act 44, 62 P.S. § 1304–A. Because Act 44 did not give general discretion to the Department or specific exceptions to the filing deadline, an untimely application may be excused only if it is allowed *nunc pro tunc* due to a breakdown in the administrative process or extraordinary circumstances. *See Bass v. Commonwealth,* 485 Pa. 256, 401 A.2d 1133 (1979);[10] *Guat Gnoh Ho v. Unemployment Compensation Board of Review,* 106 Pa.Cmwlth. 154, 525 A.2d 874 (1987) (extending *Bass* to late filings in administrative proceedings); *Marconi v. Insurance Department,* 163 Pa.Cmwlth. 23, 641 A.2d 1240 (1994).

■ To show a breakdown in the administrative process, Dr. El–Attrache had to prove that he did all that he could do to file the application in the manner that the Department prescribed for applying for the abatement, i.e., that he properly filled out the application and was prevented from filing it by outside factors not within his control. He argues that he met that burden because the undisputed facts as found by the Commissioner necessarily lead to the inference that the Department's system failed because: 1) Knopsnider made a timely electronic filing of Dr. El–Attrache's application; 2) the electronic process failed; 3) the Department was in control of that process; and 4) Dr. El–Attrache's computer upon which the filing was made was in working order. Dr. El–Attrache argues that these circumstances were extraordinary and caused him to miss the 2003 abatement application deadline.

Even assuming that the inference can be drawn that it was the Department's fault that his application was not received, all that demonstrates is that Dr. El–Attrache's first and only attempt to make the electronic filing failed. When the screen went "white" and the hard copy did not print, a reasonable person would have taken that as a signal that the on-line application was not successfully transmitted to the Department. When that occurred, Knopsnider should have attempted to resubmit the application online[11] or seek

---

9. Our scope of review of an administrative agency's adjudication is limited to whether the adjudication violates constitutional rights, is not in accordance with agency procedure or with applicable law, or any finding of fact necessary to support the adjudication is not based upon substantial evidence. *Connecticut General Life Insurance Company v. Pennsylvania Life and Health Insurance Guaranty Association,* 866 A.2d 465 (Pa.Cmwlth.2005).

·10. In *Bass,* a secretary's illness and absence from the office caused an appeal not to be filed, and upon her return, she notified her employer, appellant's counsel, who then sought permission to file four days late on a *nunc pro tunc* basis. Our Supreme Court held that where an appeal is not timely because of non-negligent circumstances, either as they relate to appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel learns of the untimeliness, has an opportunity to address it, the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow a *nunc pro tunc* appeal.

11. In his submission to the Administrative Hearings Office, Dr. El–Attrache indicated that he didn't attempt to file a second online application because of penalties imposed for doing so. However, we have found nothing in the statute to this effect and Dr. El–Attrache has provided no authority for this contention.

assistance from the MCARE hotline to see if the on-line submission had been received. Not only was the "signal" ignored, but the online notice sent to all applicants for the abatement, including Dr. El–Attrache, provided that to perfect the application, a hard copy had to be signed and returned to the Department. Even if Knopsnider reasonably believed that the on-line transmission was successful, she failed to perfect the application by not mailing back a required hard copy with the supporting documentation.[12] Considering undisputed omissions by Dr. El–Attrache's office in the filing of the application and the undisputed failure to seek assistance or resolve the problem prior to the deadline, the Commissioner did not err in concluding that Dr. El–Attrache had not established that his untimely 2003 abatement application was a result of non-negligent circumstances so as to permit a *nunc pro tunc* filing. *See Upper Allegheny Joint Sanitary Authority v. Department of Environmental Resources*, 130 Pa.Cmwlth. 106, 567 A.2d 342 (1989) (failure to take necessary precautions to ensure compliance with a filing deadline does not constitute a special circumstance excusing late filing.)

Accordingly, the Commissioner's order is affirmed.

### *O R D E R*

AND NOW, this 1st day of June, 2006, the order of the Commissioner of the Pennsylvania Insurance Department, No. MM05–05–019, is affirmed.

---

12. In addition to the application for an abatement, the statute required that a health care provider must also submit: 1) a statement of the provider's field of practice, including any specialty; 2) any proof of payment of the provider's MCARE Fund assessment for the preceding calendar year; 3) a copy, and proof of payment, of the provider's premium for medical professional liability insurance for the preceding and current calendar years; 4) a signed certificate of retention indicating that the provider will continue to practice in the Commonwealth for the upcoming year; 5) a signed certification that the provider has not been rendered ineligible to participate in the Retention Program by the ineligibility criteria in the statute; and 6) any other information that the Department might require. Section 3, 62 P.S. §§ 1304–A (a)(1)-(6).