912 A.2d 768

**Allen S. GABROY, M.D., Appellant,**

**v.**

**COMMONWEALTH OF PENNSYLVANIA MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND and Pennsylvania Property and Casualty Insurance Guaranty Association, Appellees.**

Supreme Court of Pennsylvania.

Dec. 27, 2006.

278

## ORDER

PER CURIAM.

We hereby **AFFIRM** the Order of the Commonwealth Court.

Justice BAER filed a dissenting statement in which Justic SAYLOR joins.

Justice BAER, dissenting.

I dissent from the Court's order affirming *per curiam* the Commonwealth Court and instead would grant oral argument to permit further review of the issue raised, which has never been addressed by this Court Specifically, this case involves whether the Medical Care Availability and Reduction of Error Fund (the Fund) is obligated to use the coverage statutorily available to an insured doctor to pay a judgment entered jointly and severally against him and two co-defendant physicians. The background is as follows.

Appellant Allen S. Gabroy was required to and did maintain a primary insurance policy of $200,000 per occurrence for professional liability,[1] and, in addition, the primary insurer, PIC, collected and remitted a surcharge to the Fund, which provided additional coverage of $1,000,000 per occurrence.[2] Gabroy was therefore insured for $1,200,000 between his primary insurance policy and the Fund.

Gabroy and two other defendants were sued in medical malpractice and found jointly and severally liable in the amount of $665,000. Delay damages of $142,467 were added thereto, for a total judgment amount of $807,467. Although the jury found Gabroy 70% negligent, co-defendant William J. Manella, M.D., twenty percent negligent, and co-defendant Suburban Surgical Associates (SSA) ten percent negligent,[3]

---

**1.** Pursuant to 40 Pa.C.S. § 3301.701(a)(1)(i)(ii), repealed, as a practicing physician Gabroy was required to maintain a primary professional liability insurance policy of $200,000 per occurrence, with a $600,000 annual aggregate.

**2.** *See* 40 Pa.C.S. § 1301.701(e), repealed.

**3.** Both of Gabroy's co-defendant joint tortfeasors maintained coverage identical to Gabroy's through PIC and the Fund.

the plaintiffs chose to collect the entire judgment against Gabroy.[4]

PIC, Gabroy's primary insurance provider, was declared insolvent, requiring the Pennsylvania Property and Causality Insurance Guaranty Association (PIGA) to pay the $200,000 policy limits to the plaintiffs. Thereafter, the Fund paid to the plaintiffs the amount of $334,868, representing 70% of the verdict ($465,000) plus 70% of delay damages and post-judgment interest minus the amount paid by PIGA ($200,000). PIGA also paid an additional $100,000 on behalf of Manella, leaving the unpaid balance of the verdict and delay damages at $172,599.

Upon the Fund's refusal to pay the balance of the verdict on Gabroy's behalf, Gabroy initiated suit against the Fund in the Commonwealth Court. In due course, Gabroy filed a motion for summary judgment, arguing that because, as a joint tortfeasor, he was liable for the entire $665,000 verdict, the Fund, as his additional insurer with a statutory limit of $1,000,000, was required to pay the entire balance due, which undisputedly was less than $1,000,000. The Fund joined PIGA as additional defendant, and both filed cross-motions for summary judgment. The Fund argued that the language of the Act entitled it to limit its payment to the 70% share of fault assigned to Gabroy. The Commonwealth Court denied Gabroy's motion for summary judgment and granted the motions for summary judgment filed by the Fund and PIGA.

Gabroy appealed to this Court, seeking review of the following issue: whether the Fund is responsible to pay on behalf of Gabroy an amount in excess of his basic insurance coverage up to his legal liability as a joint tortfeasor, or whether the Fund is only required to pay on Gabroy's behalf an amount equal to his percentage of causal negligence as determined by the jury, thereby exposing Gabroy to personal liability.

4. *See* 42 Pa.C.S. § 8323 (pertaining to contribution among tortfeasors). *See also Baker v. ACandS, Inc.*, 562 Pa. 290, 755 A.2d 664, 669 (2000) ("the plaintiff may recover the entire damages award from only one of the joint tortfeasors. That joint tortfeasor's recourse for paying more than its proportionate share of the verdict is to sue the nonpaying joint tortfeasors in contribution.").

Gabroy argues that as additional insurer, the Fund provided insurance for his legal liability, not his percentage of causal negligence. Because, as joint tortfeasor, he is legally liable for 100 percent of the verdict, *see Baker v. ACandS, Inc.*, 562 Pa. 290, 755 A.2d 664, 669 (2000), Gabroy argues that the Fund is required to indemnify him for the entire verdict in excess of his primary insurance coverage of $200,000. Gabroy argues that his position is supported by the Act's language, legislative history, and legislative intent. On the other hand, the Fund argues that its obligation is limited to those claims that exceed the primary coverage of the health care provider, which in this case was limited by the seventy percent share of fault assigned to Gabroy.

I believe that the arguments advanced by Gabroy may have merit and, at the very least, warrant this Court's further consideration. The relevant provision of the Act states, in pertinent part:

> There is hereby created a contingency fund for the purpose of paying all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the fund as a consequence of any claim for professional liability brought against such health care provider as a defendant or an additional defendant to the extent such health care provider's **share** exceeds its basic coverage insurance in effect at the time of occurrence as provided in subsection (a)(1).

40 P.S. § 1301.701 (repealed) (emphasis added). The word "share" is not defined in the Act. Accordingly, I do not believe that this language makes clear that the coverage afforded each health care provider is to be limited to the percentage of the verdict designated by the jury.[5] Rather, I believe that "share" refers to the amount for which the provider is liable. In this case, due to the plaintiff's decision to enforce the entire judgment against Gabroy, that amount is 100 percent of the

---

5. Indeed, it is noteworthy that the trial court, in its discretion, could have provided the jury with a general verdict slip eliminating the determination of the percentage of negligence. If that would have occurred, it appears irrefutable that Gabroy's undifferentiated share would have had to have been 100%.

verdict. It is certainly not clear from this language that the legislature intended the Act to trump the long-standing principle of joint and several liability.[6]

Further, I find merit in Gabroy's argument that legislative intent does not support the Fund's position. Rather, the legislature intended the Fund to indemnify doctors up to their legal liability. *See, i.e.,* Legislative Journal—Senate (Pa.), October 2, 1975 p. 883 (remarks of Senator Freeman Hankins indicating that the Fund will assume all liability in excess of the basic insurance coverage); *Milton S. Hershey Med. Ctr. v. Med. Prof'l Liab. Catastrophe Loss Fund,* 573 Pa. 74, 821 A.2d 1205, 1211 ("[The Fund] will be available to pay any claims or awards above ... the basic medical malpractice insurance policy carried by the health care provider.") (quoting Legislative Journal—House (Pa.), July 21, 1975 p. 2281 (remarks of Rep. Berson)).

Finally, it is not at all clear that Gabroy is seeking to have the Fund "drop down" to pay amounts properly attributable to PIC or to co-defendants Manella and SSA. Rather, Gabroy is simply seeking to invoke his excess insurance where his liability exceeds the primary insurance coverage. As Gabroy presents a strong argument that the Fund was created to provide such additional coverage, I believe that this Court should grant oral argument to determine whether, in a case of joint and several liability, where the provider is liable for 100 percent of the verdict, the Fund may properly limit its obligation to the percentage of causal negligence found by the jury, where the Fund's statutory maximum is not implicated.

Justice SAYLOR joins in this dissenting statement.

---

6. In Pennsylvania, joint tortfeasors are jointly and severally liable. *Baker,* 755 A.2d at 669. Thus, we have long held that the plaintiff may recover the entire damages award from only one of the joint tortfeasors. *Incollingo v. Ewing,* 474 Pa. 527, 379 A.2d 79, 85 (1977) (holding that a joint tortfeasor is liable for the entire amount of the judgment entered on behalf of plaintiff).