985 A.2d 678

Johanna FLETCHER, Administratrix of the Estate of Timothy Fletcher,

v.

PENNSYLVANIA PROPERTY & CASUALTY INSURANCE GUARANTY ASSOCIATION and Commonwealth of Pennsylvania, Medical Care Availability and Reduction of Error Fund

Appeal of the Commonwealth of Pennsylvania, Medical Care Availability and Reduction of Error Fund.

Supreme Court of Pennsylvania.

Argued Dec. 4, 2008.

Decided Dec. 15, 2009.

Zella Smith Anderson, Medical Care Availability & Reduction of Error Fund, Tawny Kay Mummah, Arthur F. McNulty, Harrisburg, for Commonwealth of Pennsylvania, Medical Care Availability & Reduction of Error Fund.

Lise Luborsky, Britt, Hankins & Moughan, Philadelphia, for Pennsylvania Property & Casualty Insurance Guaranty Association.

Daniel L. Thistle, Thomas M. Thistle, III, Thistle Law Firm, Philadelphia, for Johanna Fletcher Administratrix of the Estate of Timothy Fletcher.

David C. Harrison, Philadelphia, for Pennsylvania Association for Justice, amicus curiae.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice BAER.

This appeal implicates the excess malpractice insurance scheme embodied in the Medical Care Availability and Reduction of Error Act (MCARE Act).[1] A successful medical malpractice plaintiff, Johanna Fletcher (Fletcher), brought a declaratory judgment action in the original jurisdiction of the Commonwealth Court to resolve coverage issues relating to the Medical Care Availability and Reduction of Error Fund (MCARE Fund).[2] We granted permission to appeal an interlocutory order to determine whether the Commonwealth

---

1. The MCARE Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. § 1303.101–1303.910, replaced its predecessor, the Health Care Services Malpractice Act (Malpractice Act) of October 15, 1975, P.L. 390, No. 111 § 101 *et seq., as amended*, 40 P.S. § 1301.101 *et seq.* The Malpractice Act created the Medical Professional Liability Catastrophe Loss Fund (CAT Fund), which the MCARE Act replaced with the MCARE Fund.

2. The MCARE Fund, which is the successor-in-interest to the CAT Fund, is a statutory excess carrier that provides excess medical malpractice insurance coverage to the extent a health care provider's

Court has original jurisdiction over the petition for review in which Fletcher sought a declaration regarding the MCARE Fund's responsibility for excess liability and delay damages, or whether Fletcher must first exhaust administrative remedies by seeking relief from the Insurance Department. Adhering to the reasoning of our decision in *Ohio Casualty Group of Ins. Companies v. Argonaut Ins. Co.*, 514 Pa. 430, 525 A.2d 1195 (1987), we conclude that the Commonwealth Court has original jurisdiction over MCARE Fund coverage disputes such as that presented by Fletcher, and, accordingly, affirm the Commonwealth Court.

The genesis of Fletcher's declaratory judgment action is the underlying wrongful death medical malpractice action filed by Fletcher in the court of common pleas of Philadelphia County on December 13, 2002, against Kominsky Kubacki Medical Associates and its employee physicians, Drs. Solomon Kominsky and Thomas Kubacki.[3] Both doctors died prior to commencement of the suit, prompting Fletcher to name the representatives of the doctors' respective estates as defendants. At all relevant times, both doctors and their professional corporation were insured by PHICO Insurance Company (PHICO) under a claims made policy.[4] PHICO was placed into liquidation in February, 2002, prior to the initiation of Fletcher's suit, and its obligations were assumed by the

liability exceeds its basic coverage in effect at the time of an occurrence. *Fletcher v. Pennsylvania Property & Casualty Ins. Guaranty Ass'n and Commonwealth of Pennsylvania, MCARE Fund*, 914 A.2d 477, 478 n. 1 (Pa.Cmwlth.2007); *Gabroy v. Commonwealth of Pennsylvania, CAT Fund and Casualty Ins. Guaranty Ass'n*, 886 A.2d 716, 717 n. 1 (Pa.Cmwlth.2005).

3. Fletcher alleged that her husband, Timothy Fletcher (Decedent), died on February 9, 2001, as a result of the negligence of Kominsky Kubacki Medical Associates and the two employee doctors.

4. A claims made policy provides coverage for claims filed while the doctor holds the policy, in contrast to an occurrence policy, which covers claims relating to any acts that occurred while the doctor held the policy, regardless of when the claims were filed. *See Paternaster v. Lee*, 581 Pa. 28, 863 A.2d 487, 489 (2004). According to Fletcher, each claims policy relevant to this case had a provision for converting it to an extended reporting policy as follows: "If the insured physician dies during the policy, an extended reporting period shall be provided and the premium for such period shall be waived." R.R. 104a.

Pennsylvania Property and Casualty Insurance Guaranty Association (PPCIGA).[5] According to Fletcher, the MCARE Fund was the excess carrier under the relevant insurance policies and was responsible for excess liability up to $1.2 million for each of the two doctors to the extent that PPCIGA paid less than such amounts.

Fletcher provided timely notice of her lawsuit to PHICO, PPCIGA, and the MCARE Fund. On January 14, 2004, PHICO informed Kominsky Kubacki Medical Associates that PPCIGA would not cover Fletcher's claim against the estates of Kominsky and Kubacki.[6] The MCARE Fund likewise denied coverage.[7] Despite these coverage disputes, the medical malpractice action proceeded and in November, 2005, a jury returned a verdict of $7 million in favor of Fletcher against the estates of Drs. Kominsky and Kubacki and their professional corporation. The trial court molded the verdict to include delay damages for a total award of $7,727,808.20.

On March 10, 2006, Fletcher brought a declaratory judgment action in the original jurisdiction of the Commonwealth Court, which the court treated as a Petition for Review, against PPCIGA and the MCARE Fund.[8] Fletcher relied upon

5. PPCIGA was created by the Act of December 12, 1994, P.L. 1005, *as amended*, 40 P.S. §§ 991.1801–991.1820, to provide a means of paying covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims, and to prevent claimants or policyholders from incurring financial loss as a result of an insurer's insolvency. *Fletcher*, 914 A.2d at 479 n. 3; *Gabroy*, 886 A.2d at 717 n. 2.

6. Essentially, PPCIGA viewed Fletcher's claim as a request for tail policy coverage. A tail policy would provide coverage for claims filed after the doctors' claims policies lapsed if the claims related to acts that occurred while the doctors had the claims policy. *Paternaster*, 863 A.2d at 489. Thus, in essence, a tail policy would convert a claims policy into an occurrence policy. *Id.* at n. 3. According to PPCIGA, it was not statutorily obligated to provide coverage in this case. *See* R.R. 122a. The validity of this conclusion is not before us.

7. The MCARE Fund has taken the position that there is no MCARE Fund coverage available for Fletcher's claim because the health care providers did not pay for the statutorily required tail coverage. Again, the substance of this decision is not before us.

8. The MCARE Act applies to this matter because Fletcher filed the underlying action for which she seeks MCARE Fund coverage on

our decision in *Ohio Casualty* to assert original jurisdiction in the Commonwealth Court. As will be discussed more fully *infra*, in *Ohio Casualty*, an insurer brought an action against the CAT Fund in the Commonwealth Court's original jurisdiction asserting that the CAT Fund was statutorily obligated to contribute to a medical malpractice settlement. The CAT Fund argued that the insurer first had to seek resolution of its coverage claim through an administrative process before the CAT Fund itself. We rejected the CAT Fund's argument, and held that because the Malpractice Act did not contain a procedure which could afford the insurer the remedy it sought, the available administrative remedies were not adequate to resolve the coverage dispute, and the Commonwealth Court, therefore, had original jurisdiction over claims against the CAT Fund.

According to Fletcher's petition, the doctors' estates had assigned their rights to her to pursue the doctors' claims against PHICO, PPCIGA, and the MCARE Fund for coverage. Substantively, Fletcher averred that PPCIGA had a statutory obligation to indemnify PHICO's claims by paying $300,000 per claim plus a share of delay damages. With regard to the MCARE Fund, Fletcher alleged that the Fund was the excess carrier and was obligated to pay excess coverage above the amount paid by PPCIGA up to $1.2 million for each doctor, plus its share of delay damages.[9]

In response to being served with Fletcher's Petition for Review, the MCARE Fund issued a letter rejecting coverage and informing Fletcher that she had thirty days to request a formal administrative hearing before a hearing officer appointed by the Insurance Commissioner.[10] Two days later the

December 13, 2002, after the October 1, 2002 effective date of the MCARE Act. *See* 40 P.S. § 1303.712.

9.  According to Fletcher, PPCIGA later acknowledged partial responsibility for the claims by tendering $300,000 less applicable statutory set-offs. Nevertheless, PPCIGA remains a party to the lawsuit because Fletcher asserts that it remains responsible for a portion of the judgment. PPCIGA has taken no position on the issue of jurisdiction over Fletcher's claim against the MCARE Fund.

10. The MCARE Fund's letter reflected its determination that there was no MCARE Fund coverage available for Fletcher's claim because the

458

MCARE Fund filed preliminary objections in the Common-
wealth Court in response to Fletcher's petition for review
asserting that the MCARE Act established the Fund within
the Insurance Department, and, therefore, Fletcher should
have filed her action with the Insurance Department's Admin-
istrative Hearings Office. Specifically, although the Common-
wealth Court had original jurisdiction over actions for recov-
ery against the CAT Fund pursuant to our decision in *Ohio
Casualty*, 525 A.2d 1195, the MCARE Fund asserted that
since the enactment of the MCARE Act, which repealed the
Health Care Services Malpractice Act (Malpractice Act) and
transferred the rights and responsibilities of the CAT Fund to
the MCARE Fund, the Insurance Commissioner has exclusive
jurisdiction over all of the MCARE Fund's written determina-
tions. The MCARE Fund argued that such exclusive jurisdic-
tion deprived the Commonwealth Court of subject matter
jurisdiction over Fletcher's petition. *See* 40 P.S. §§ 1303.712
("There is hereby established within the State Treasury a
special fund to be known as the Medical Care Availability and
Reduction of Error Fund."), 1303.713(a) ("The [MCARE] fund
shall be administered by the [Insurance] department."); 2
Pa.C.S. § 501 *et seq.; Myers v. Commonwealth, Dep't of
Revenue*, 55 Pa.Cmwlth. 509, 423 A.2d 1101 (1980) (holding
that where a proceeding lies within exclusive jurisdiction of
either the Department of Revenue's Board of Appeals or the
Department's Board of Finance and Revenue, declaratory
relief is unavailable under the Declaratory Judgment Act).
The MCARE Fund further asserted that because Fletcher
failed to bring her claim to reverse the MCARE Fund's
coverage determination before the Insurance Department, she
failed to exhaust her administrative remedies.

Following oral argument, a single judge of the Common-
wealth Court sustained the MCARE Fund's preliminary ob-
jections and transferred the matter to the Insurance Commis-
sioner. *Fletcher v. PPCIGA and MCARE Fund,* slip op.

---

health care providers failed to pay for tail coverage. *See* 31 Pa.Code
§§ 242.2, 242.7(a)(2). Fletcher did not request a formal administrative
hearing.

(Pa.Cmwlth. July 13, 2006). Because the MCARE Fund was established within the Insurance Department, *see* 40 P.S. § 1303.713(a), the judge agreed with the MCARE Fund that the Insurance Department, not the Commonwealth Court, had original jurisdiction over Fletcher's action.[11] Fletcher filed an application for reargument, which the Commonwealth Court granted. Before the three-judge Commonwealth Court panel, the MCARE Fund again argued that the court lacked jurisdiction because the Insurance Department possesses exclusive subject matter jurisdiction over all of the MCARE Fund's written determinations. Although the MCARE Fund agreed that the Commonwealth Court properly exercised original jurisdiction over the CAT Fund, *see Ohio Casualty*, the MCARE Fund asserted that this was because the CAT Fund, unlike the MCARE Fund, was an independent Commonwealth agency without a formal administrative hearing process. Because the MCARE Act located the MCARE Fund in the Insurance Department, the MCARE Fund argued that the legislature abrogated the Commonwealth Court's original jurisdiction over these claims, and subjected the MCARE Fund to the Insurance Department's internal appeal process. According to the MCARE Fund, therefore, all of its determinations, like all other Insurance Department determinations, are appealable first to the Department's Administrative Hearings Office, then to the Insurance Commissioner, and only then to the Commonwealth Court in its appellate jurisdiction.[12]

Fletcher responded that the Commonwealth Court retained exclusive jurisdiction over disputes involving MCARE Fund coverage, just as it did for the CAT Fund. According to

11. As to PPCIGA, the judge ruled that resolution of the MCARE Fund's preliminary objection did not relate to the claim against PPCIGA, and transferred that claim to the court of common pleas.

12. The Commonwealth Court's standard of review over appeals from agencies such as the Insurance Department requires it to affirm the administrative adjudication below unless it finds that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed, or that any necessary finding of fact is not supported by substantial evidence of record. 2 Pa.C.S. § 704; *David Griffiths v. W.C.A.B. (Seven Stars Farm, Inc.)*, 596 Pa.317, 943 A.2d 242, 248–49 (2008).

Fletcher, the MCARE Act contains many of the same provisions contained in the former Malpractice Act, and the General Assembly did not alter the Commonwealth Court's original jurisdiction over coverage disputes. Fletcher pointed out that although Section 712(d)(3) of the MCARE Act, 40 P.S. § 1303.712(d)(3), expressly provides for administrative appeals of assessments to the Insurance Department, the Act is silent as to administrative appeals involving coverage determinations.[13] Thus, under the principle of statutory construction *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), Fletcher argued that the MCARE Act's failure to include an express administrative appeal provision for coverage disputes implied that none was intended and that, therefore, the General Assembly left the Commonwealth Court's original jurisdiction over such disputes intact.

Despite the minor distinctions between the Malpractice Act/CAT Fund and the MCARE Act/MCARE Fund, the Commonwealth Court *sub judice* held that *Ohio Casualty* remains controlling for several reasons. First, the court held that the MCARE Act's silence on the resolution of coverage disputes indicated that the legislature did not intend to change the Commonwealth Court's jurisdiction, as articulated by this Court in *Ohio Casualty*. Second, the similarity of language and responsibilities between the Malpractice Act and the MCARE Act supported the conclusion that the General Assembly did not intend to change the jurisdiction of the Commonwealth Court in regard to coverage disputes. Finally, the court found that there were no adequate regulatory procedures within the Insurance Department to resolve coverage disputes involving the MCARE Fund.[14]

13. This section provides: "(3) Any appeal of the assessment shall be filed with the department." 40 P.S. § 1303.712(d)(3).

14. The court also expressed concern that if it did not have original jurisdiction, then Fletcher would have to pursue her appeal of the MCARE Fund's determination in the Insurance Department's administrative forum while simultaneously pursuing her action against PPCIGA in the court of common pleas, *see Greenfield v. PIGA,* 24 Pa.Cmwlth. 127, 353 A.2d 918 (1976) (holding that PPCIGA is not a Commonwealth

Judge Kelley dissented, referring to the Insurance Commissioner's public explanation that timely appeals of written determinations made by the MCARE Fund are subject to the formal administrative hearings process of the Insurance Department and are governed by the Administrative Agency Law, 2 Pa.C.S. §§ 501–508 and 701–704, and the Pennsylvania Code, 1 Pa.Code Part II, and 31 Pa.Code §§ 56.1–56.3. *See* 32 Pa. Bull. 4553 (2002) (advising that an aggrieved party who disputes a written determination by the MCARE Fund may request a formal administrative hearing before the Insurance Commissioner). Thus, Judge Kelley accepted the MCARE Fund's argument that there was an adequate and available administrative remedy to resolve the relevant coverage dispute, rendering *Ohio Casualty* distinguishable and inapplicable.

On appeal we must determine whether a party challenging the MCARE Fund's coverage determination may bring an action in the Commonwealth Court's original jurisdiction, or whether, as the MCARE Fund asserts, the challenging party must first exhaust administrative remedies by seeking relief with the Insurance Department. This question involves statutory interpretation and as such, presents a question of law over which our scope of review is plenary and the standard of review is *de novo*. *Kopko v. Miller*, 586 Pa. 170, 892 A.2d 766, 770 (2006). To the extent this case involves statutory construction, we are mindful of the principles that guide us. Specifically, in determining legislative intent, sections of a statute must be read together and construed with reference to the entire statute. 1 Pa.C.S. § 1921(a). When the words of a statute are free and clear of all ambiguity, we

agency subject to the Commonwealth Court's original jurisdiction), whereas if the Commonwealth Court had original jurisdiction, Fletcher could pursue her claims against both the MCARE Fund and PPCIGA together therein. The MCARE Fund does not dispute that if Fletcher's action against it can proceed in the Commonwealth Court, so too can her action against PPCIGA. *See, e.g., Gabroy*, 886 A.2d 716 (hearing claims against the CAT Fund and PPCIGA in the Commonwealth Court's original jurisdiction); *Fetters v. PPCIGA, CAT Fund, et al.*, 804 A.2d 126 (Pa.Cmwlth.2002) (same); *Elliott–Reese v. CAT Fund and PPCIGA*, 805 A.2d 1253 (Pa.Cmwlth.2002) (same).

cannot disregard the letter of the statute under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Also, where the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded. *Fonner v. Shandon, Inc.*, 555 Pa. 370, 724 A.2d 903, 907 (1999); *Cali v. City of Philadelphia*, 406 Pa. 290, 177 A.2d 824, 832 (1962). Finally, where a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent. *Fonner*, 724 A.2d at 907; *Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392, 395 (1979).

According to the MCARE Fund, the Commonwealth Court had original jurisdiction over all disputes involving the CAT Fund because the CAT Fund was a stand-alone, executive agency with no internal administrative review process to address appeals of CAT Fund determinations. *See Ohio Casualty*, 525 A.2d 1195. However, the MCARE Fund, in contrast, is lodged within the Insurance Department. 40 P.S. § 1303.713(a) ("The fund shall be administered by the department."). Therefore, according to the MCARE Fund, all of its decisions are subject to the Insurance Department's administrative appeal process, and the Insurance Department has exclusive jurisdiction over all MCARE Fund decisions. As support for this position, the MCARE Fund directs our attention to the publication in the Pennsylvania Bulletin of "Medical Care Availability and Reduction of Error Fund Administrative Hearings Process; Notice No. 2002–08," which explains that appeals of MCARE Fund determinations will follow the Insurance Department's administrative hearing process:

Effective October 1, 2002, the Medical Care Availability and Reduction of Error (MCARE) Act (40 P.S. §§ 1303.101–1303.5108) establishes the Medical Care Availability and Reduction of Error Fund (MCare Fund) as a special fund within the State Treasury. The MCare Fund will be administered by the Insurance Department (Department). Timely appeals of written determinations made by the MCare Fund will be subject to the formal administrative hearings process of the Department. Appeals shall be governed by 2

Pa.C.S. §§ 501–508 and 701–704 (relating to the Administrative Agency Law), 1 Pa.Code Part II (relating to General Rules of Administrative Practice and Procedure) and 31 Pa.Code §§ 56.1–56.3 (relating to Special Rules of Administrative Practice and Procedure).

An aggrieved party that disputes a written determination by the MCare Fund may request, in writing, a formal administrative hearing before the Insurance Commissioner. The written determination by the MCare Fund shall advise how to timely request a hearing before the Insurance Commissioner.

32 Pa. Bull. 4553 (September 14, 2002).

Thus, according to the MCARE Fund, its final determinations, like all other determinations issued by other subdivisions of the Insurance Department, must be appealed to the Commissioner's Administrative Hearings Office. 2 Pa.C.S. §§ 501 *et seq.;* 1 Pa.Code Part II; 31 Pa.Code §§ 56.1–56.3. This office would conduct a *de novo* hearing, and the Insurance Commissioner as adjudicator would decide whether the MCARE Fund's final determination should be upheld or overturned.[15] The MCARE Fund asserts that this Court has validated the Department's administrative process. *See Stone and Edwards Ins. Agency, Inc. v. Com., Dept. of Ins.,* 538 Pa. 276, 648 A.2d 304, 308 (1994) (finding that the Insurance Department has erected sufficient "walls of division" to comply with due process with regard to the investigation, prosecution, and adjudication of alleged insurance law violations). The MCARE Fund asserts that the Department's administrative process benefits appellants, who receive review without

**15.** The MCARE Fund asserts that several such disputes involving the MCARE Fund have been heard by the Commonwealth Court in its appellate jurisdiction. *See, e.g., Bender v. Pa. Ins. Dep't, MCARE Fund,* 893 A.2d 161 (Pa.Cmwlth.2006) (affirming Commissioner's decision that MCARE coverage does not apply to indemnification actions between health care providers); *Meis v. Pa. Ins. Dep't, MCARE Fund,* No. 198 C.D.2005 slip op. (Pa.Cmwlth. June 28, 2006) (same); *Allen v. Pa. Ins. Dep't, MCARE Fund,* 903 A.2d 65 (Pa.Cmwlth.2006) (affirming the Commissioner's decision denying doctor's abatement application *nunc pro tunc* ); *El–Attrache v. Pa. Ins. Dep't,* 900 A.2d 455 (Pa.Cmwlth.2006) (same).

delay, with the benefit of the Commissioner's expertise, and who will not have to defend if they prevail before the Insurance Commissioner, as the MCARE Fund is precluded from appealing if it loses at the administrative level. This impartial, *de novo* hearing, according to the MCARE Fund, presents no conflict of interest, as the Insurance Department is determining the outcome of litigation involving the MCARE Fund as it does for all other distinct subdivisions within the Department.[16] Further, according to the MCARE Fund, the Commonwealth Court, sitting in its appellate capacity, gains from the efficiencies of the administrative process, which include a fully developed administrative record, without the need for the court to hold time consuming hearings.[17] As evidence that the administrative review process within the Department provides impartial, independent review, the MCARE Fund asserts that the Commissioner has overturned MCARE Fund decisions on several occasions.

The MCARE Fund acknowledges that in the MCARE Act, the legislature specifically provided that appeals from the MCARE Fund's assessment determinations are to be taken to the Insurance Department, 40 P.S. § 1303.712(d)(3), but that the legislature was silent with regard to appeals from other MCARE Fund decisions.[18] The MCARE Fund attempts to explain this by pointing out that when the Malpractice Act and the CAT Fund were in existence, the CAT Fund director had to submit an assessment to the Insurance Commissioner for review and approval. *See* 40 P.S. § 1301.701(e)(6) (providing that the Commissioner could disapprove a surcharge set by the CAT Fund if it was inadequate or excessive). The

16. The MCARE Fund asserts that all appeals from agent license denials, homeowners' and automobile insurance cancellations, agency terminations, rate disapprovals, and market conduct reviews are taken pursuant to this administrative appeal process.

17. The MCARE Fund asserts that there is nothing to prevent PPCIGA from being a party to the administrative action before the Commissioner. While this question is not precisely before us, we are unaware of any statutory or case law supporting the MCARE Fund's bald assertion.

18. The MCARE Fund is funded "by an assessment on each participating health care provider," 40 P.S. § 1303.712(d)(1), the amount of which is determined by the MCARE Fund.

MCARE Fund asserts that pursuant to Commonwealth Court precedent, *see Meier v. Maleski*, 167 Pa.Cmwlth. 458, 648 A.2d 595, 603 (1994), appeals of the Insurance Commissioner's decisions in this regard were brought in the Commonwealth Court's original jurisdiction because the Commissioner could not act as both assessment approver and adjudicator.[19] According to the MCARE Fund, the legislature sought to alter this clear Commonwealth Court precedent with the MCARE Act, and therefore specifically divested the Commonwealth Court of its original jurisdiction by providing that assessment appeals belong within the Insurance Department. *See* 40 P.S. § 1303.712(d)(3) ("Any appeal of the assessment shall be filed with the department."). The MCARE Fund asserts that this provision does not indicate a legislative intent to leave other challenges to MCARE Fund decisions within the original jurisdiction of the Commonwealth Court.

Consequently, the MCARE Fund concludes that the Commonwealth Court cannot have original jurisdiction over appeals from MCARE Fund decisions. *See Myers*, 423 A.2d 1101 (where exclusive jurisdiction over a matter lies with a state agency, the Commonwealth Court is without jurisdiction). According to the MCARE Fund, only the Commissioner's adjudication in favor of the MCARE Fund may be appealed to the Commonwealth Court in its appellate jurisdiction.

Fletcher notes that according to this Court in *Ohio Casualty*, the Commonwealth Court had original jurisdiction over coverage disputes with the CAT Fund. According to her argument, when the legislature transferred all of the rights and liabilities of the CAT Fund to the MCARE Fund, *see* 40

---

19. In *Meier v. Maleski*, 167 Pa.Cmwlth. 458, 648 A.2d 595, 602 (1994), the Commonwealth Court rejected the CAT Fund's argument that there was an administrative review process for health care providers challenging the CAT Fund's assessment amounts, and that the health care providers who brought their challenge in the original jurisdiction of the Commonwealth Court had failed to exhaust their available administrative remedies before seeking judicial review. The Commonwealth Court found that, much like the insurer in *Ohio Casualty*, the health care providers challenging the assessment amounts were without an adequate administrative remedy, and therefore could not be said to have failed to exhaust administrative remedies. *Id.* at 603.

P.S. § 1303.712(b),[20] without changing the jurisdiction for coverage disputes, it clearly indicated its intent that the Commonwealth Court retain original jurisdiction over these disputes. Fletcher argues that this becomes clear upon examination of the MCARE Act's treatment of assessment appeals, which, as noted, transferred jurisdiction of appeals of assessment amounts from the Commonwealth Court, *see Meier*, 648 A.2d 595, to the Insurance Department, *see* 40 P.S. § 1303.712(d). If the legislature had likewise wanted appeals of coverage determinations to be transferred from the Commonwealth Court, *see Ohio Casualty*, Fletcher asserts that it would have simply said so, as it did for assessment challenges. Its failure to do so, according to Fletcher, indicates its intent to leave challenges to coverage determinations in the original jurisdiction of the Commonwealth Court.

Although the legislature stated that the MCARE Fund should be administered by the Insurance Department, *see* 40 P.S. § 1303.713(a) ("The fund shall be administered by the department."), Fletcher argues that this statement alone did not change that jurisdiction over coverage disputes is vested in the original jurisdiction of the Commonwealth Court. In fact, as Fletcher points out, Section 713 does not refer to the Commonwealth Court or otherwise address the appeal process at all-it simply states that the Insurance Department shall administer the MCARE Fund. The General Assembly's failure to address challenges to coverage determinations, according to Fletcher, indicates that the legislature did not intend to change the *status quo*, which, pursuant to *Ohio Casualty*, vested original jurisdiction over coverage disputes in the Commonwealth Court.

Finally, Fletcher argues that the Insurance Department's appeal process does not afford an appropriate or adequate remedy, thus obviating the requirement of exhaustion of administrative remedies. *See Ohio Casualty*, 525 A.2d at 1197 (stating that a party seeking relief must first exhaust administrative remedies, unless the administrative process is incapa-

**20.** This section transferred all of the assets, liabilities, obligations, and rights of the CAT Fund to the MCARE Fund. 40 P.S. § 1303.712(b).

ble of providing relief). Specifically, Fletcher explains that her claims against both the MCARE Fund and PPCIGA involve the question of whether there were one or two insurance policies involved. The Insurance Commissioner, however, has no authority to adjudicate disputes with PPCIGA. Therefore, according to Fletcher, under the MCARE Fund's position, a plaintiff would be required to follow the Insurance Department's administrative appeal process for a claim against the MCARE Fund, and simultaneously pursue a claim against PPCIGA in the court of common pleas, which could potentially lead to inconsistent holdings. Fletcher further asserts that the Commissioner has no jurisdiction over issues involving pre-judgment interest, post-judgment interest, and delay damages.

Having set forth the parties' arguments, we will now review the statutory framework of the CAT Fund and its replacement, the MCARE Fund. The legislature created the CAT Fund in 1975 as part of the Malpractice Act. *See* 40 P.S. § 1301.101 *et seq.* The purpose of the Malpractice Act was to provide reasonably priced professional malpractice insurance to health care providers in the Commonwealth and to insure that persons who are victims of medical malpractice can obtain prompt and fair compensation. 40 P.S. § 1301.102; *Milton S. Hershey Med. Ctr. v. CAT Fund,* 573 Pa. 74, 821 A.2d 1205, 1208 (2003); *Ohio Casualty,* 525 A.2d at 1195–96. Thus, the CAT Fund was created to pay "all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the [CAT Fund] as a consequence of any claim for professional liability brought against such health care provider as a defendant ... to the extent such health care provider's share exceeds its basic coverage insurance in effect at the time of occurrence...." 40 P.S. § 1301.701(d).[21]

21. In *Ohio Casualty,* we explained how the system was intended to operate as follows:

> The system which the [Malpractice Act] established contemplates that every health care provider who conducts more than 50% of his business in the Commonwealth must insure himself against professional liability by maintaining "basic coverage insurance" in the amount of $100,000 for each occurrence and $300,000 in the annual

The CAT Fund was an independent Commonwealth executive agency with a director appointed by the Governor. It had no internal administrative appeal process to address claims brought directly against it alleging its failure to complete its statutory duty by paying its share of liability.[22] *Ohio Casualty*, 525 A.2d at 1198.

In *Ohio Casualty v. Argonaut Ins. Companies and Dir. of the CAT Fund*, 92 Pa.Cmwlth. 560, 500 A.2d 191 (1986), an excess insurer subject to a medical malpractice settlement brought an action in the Commonwealth Court's original jurisdiction against the CAT Fund, asserting that the CAT Fund was statutorily obligated to contribute to the settlement. The CAT Fund filed preliminary objections similar to those presented by the MCARE Fund in the instant case, asserting that there was an adequate administrative remedy, and that because the excess insurer failed to seek reimbursement directly from the Fund in accord with this process before going to the Commonwealth Court, it had failed to exhaust its administrative remedies. *Id.* at 194. Specifically, the CAT Fund indicated that the Pennsylvania Code, applicable to the CAT Fund pursuant to the Fund's regulations, provided an adequate remedy. *Id.* (referring to 31 Pa.Code §§ 242.1– 242.20, and 1 Pa.Code § 35.9).

Addressing the CAT Fund's contentions, the Commonwealth Court noted that whether the CAT Fund was liable

aggregate. 40 P.S. § 1301.701(a)(1)(i). The Act established the Fund to provide liability coverage over and above the basic coverage insurance up to $1,000,000 for each occurrence and $3,000,000 in the annual aggregate. 40 P.S. § 1301.701(d). Capitalization of the Fund is from surcharges levied by the director upon the health care providers who are entitled to participate. 40 P.S. § 1301.701(e)(1)- (4). The Act also provides that no insurer who provides excess professional liability insurance to a health care provider eligible for coverage by the Fund will be liable for payment of any claim except when it exceeds the Fund's limits. 40 P.S. § 1301.705(a).
*Ohio Casualty*, 525 A.2d at 1196. *See also Hershey Medical Center*, 821 A.2d 1205.

22. Presently, the MCARE Fund acknowledges that the CAT Fund had no internal administrative appeal process, and asserts that the Commonwealth Court's original jurisdiction over the CAT Fund was entirely appropriate.

over to the excess insurer was dependent on whether there were one or two occurrences of medical malpractice, and reasoned that the resolution of this issue was a question of fact appropriate for an impartial fact-finder. *Id.* Further, because there were no specific statutory provisions contained in the Malpractice Act regarding claims between insurance companies and the CAT Fund to resolve coverage disputes, the Commonwealth Court held that the Fund's regulations could not address such claims. *Id.* Finally, the Court noted that the director of the CAT Fund was statutorily authorized to "defend, litigate, settle or compromise any claim payable by the [F]und," 40 P.S. § 1301.702(f), but was not authorized to determine the outcome of such claims. *Ohio Casualty*, 500 A.2d at 194.

On appeal, this Court considered whether the excess insurer who had paid a claim allegedly owed by the CAT Fund was barred from bringing an original action in the Commonwealth Court, and instead was required to first seek resolution of its claim through the CAT Fund's administrative process. We affirmed the Commonwealth Court. *Ohio Casualty*, 525 A.2d 1195. In resolving the question before us, we addressed the doctrine of exhaustion of administrative remedies, and noted that the requirement that a litigant must exhaust administrative remedies before seeking judicial review is founded on the courts' recognition of the mandate of the legislature that statutorily prescribed remedies are to be strictly pursued, *see* 1 Pa.C.S. § 1504, and is an acknowledgement that an unjustified failure to follow the administrative scheme established by the legislature undercuts the rationale upon which the administrative process is founded: "that the technical nature of the subject and the ability of an administrative body to examine it suffice as a matter of public policy to displace preliminary court action." *Ohio Casualty*, 525 A.2d at 1197 (citing *T. Mendelson Co., Inc., et al. v. Pennsylvania R. Co.*, 332 Pa. 470, 2 A.2d 820, 822 (1938)). However, although one must generally exhaust administrative remedies before seeking judicial relief, we acknowledged that "[w]here the administrative process has nothing to contribute to the decision of the issue

and there are no special reasons for postponing its immediate decision, exhaustion should not be required." *Id.* at 1198. We further noted that exhaustion is not required when the administrative process is not capable of providing the relief sought. *Id.*

Examining the basic nature of the excess insurer's claim for coverage in *Ohio Casualty*, which was premised on the CAT Fund's alleged statutory liability, we agreed with the Commonwealth Court that the Malpractice Act lacked any specific procedure to challenge administratively the CAT Fund's denial of coverage. *Id.*[23] We concluded that the administrative procedures of the Malpractice Act did not anticipate claims brought directly against the CAT Fund premised upon the Fund's failure to complete its statutory duty to pay its share. *Id.* Therefore, we held that recourse to the courts was necessary. In reaching this conclusion, we rejected the CAT Fund's argument that its statutory power to "defend, litigate, settle, or compromise any claim by the Fund," 40 P.S. § 1301.702(f), dictated that the insurer must first formally present its claim to the CAT Fund before gaining access to the courts, because the CAT Fund could point to no statutorily prescribed procedure for the insurer to follow to dispute the CAT Fund's liability determination before the Fund. *Ohio Casualty*, 525 A.2d at 1198. Thus, we concluded that the requirement that a litigant exhaust administrative remedies should only be applied where the available administrative remedies are adequate with respect to the alleged injury sustained and the relief requested. *Id.* Because there was no

**23.** We noted that the provisions of the Malpractice Act were directed to resolving claims brought by injured patients against health care providers. *Ohio Casualty*, 525 A.2d at 1198. This was an apparent reference to 40 P.S. § 1301.309, which directed that all claims by "a patient or his representative for loss or damages resulting from the furnishing of medical services" were to be brought in the original jurisdiction of an arbitration panel. *See Ohio Casualty*, 500 A.2d at 194 (citing 40 P.S. § 1301.309 as the source of an administrative procedure directed at resolving claims between a patient and health care provider). We declared this provision unconstitutional in *Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190 (1980), and nullified it in *Heller v. Frankston*, 504 Pa. 528, 475 A.2d 1291 (1984). The legislature repealed this section in 1996. *See* P.L. 27, No. 10, § 9(a) 1996, Feb. 23.

administrative remedy available to the excess insurer claiming CAT Fund coverage, we affirmed the Commonwealth Court. *Id. See also Milton S. Hershey Med. Ctr. of Pennsylvania State Univ. v. Com. of Pennsylvania CAT Fund*, 763 A.2d 945, 949 (Pa.Cmwlth.2000) (holding that pursuant to *Ohio Casualty*, the CAT Fund director is not authorized to determine who is covered and when such coverage applies); *Physicians Ins. Co. v. Callahan*, 167 Pa.Cmwlth. 485, 648 A.2d 608, 616 (1994) (relying on *Ohio Casualty* to permit an action against the CAT Fund for coverage in the Commonwealth Court's original jurisdiction and noting the adversarial relationship that this Court recognized that at times exists between the CAT Fund and other medical malpractice insurers).

Following *Ohio Casualty*, the Commonwealth Court decided *Meier*, 648 A.2d 595, 603. There, health care providers brought an action in the Commonwealth Court's original jurisdiction challenging the assessment amounts imposed by the CAT Fund. Similar to the defense offered in *Ohio Casualty*, the CAT Fund argued that the health care providers failed to exhaust their administrative remedies.[24] Relying on *Ohio Casualty*, the Commonwealth Court rejected the CAT Fund's argument, finding that health care providers seeking to challenge assessment amounts were in much the same position as the insurer in *Ohio Casualty*, as they were seeking relief based on the CAT Fund's alleged noncompliance with the mandates of the Malpractice Act. *Id.* at 603. Moreover, although the CAT Fund suggested a course that the health care providers might have followed, the court found it was inadequate with respect to the alleged injury sustained and relief requested, because there was no concrete statutorily prescribed procedure which providers were required to follow when they felt the CAT Fund had overcharged them. *Id.* Because the Malpractice Act afforded the health care provid-

24. In the context of an assessment imposed by the CAT Fund under the Malpractice Act, the CAT Fund argued that health care providers could appeal assessment amounts by intervening in the administrative process whereby the Insurance Commissioner approved the assessment established by the CAT Fund pursuant to the Commonwealth's Rules of Administrative Practice and Procedure, 1 Pa.Code §§ 31.1–35.251.

ers no remedy in the circumstances of their complaint, the CAT Fund could not successfully argue that they had failed to exhaust their administrative remedies. *Id.*

Pursuant to *Ohio Casualty* and *Meier*, therefore, coverage disputes and assessment challenges involving the CAT Fund were brought in the original jurisdiction of the Commonwealth Court because the Malpractice Act lacked a specific statutorily prescribed procedure for the insurer or health care provider to follow. *See* 42 Pa.C.S. § 761(a)(1) ("The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings: (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity. . . ."); *Lloyd v. CAT Fund*, 573 Pa. 114, 821 A.2d 1230 (2003) (noting that in a case brought by a plaintiff, standing in the shoes of the medical malpractice defendant doctor, to challenge the CAT Fund's denial of coverage (based on the failure to receive a timely surcharge), the "Commonwealth Court has exclusive jurisdiction to hear cases involving the CAT Fund, an agency of the Commonwealth"); *Willet v. CAT Fund*, 549 Pa. 613, 702 A.2d 850, 851 n. 1 (1997) (noting that in an action by health care providers seeking indemnity or contribution by the CAT Fund, the Commonwealth Court has exclusive jurisdiction to hear cases involving the Fund as an agency of the Commonwealth); *Connolly v. Com., CAT Fund*, 693 A.2d 1018, 1019 (Pa.Cmwlth.1997) (relying on *Ohio Casualty* to permit an action against the CAT Fund for coverage in the Commonwealth Court's original jurisdiction), *aff'd* 559 Pa. 1, 739 A.2d 104, 105 (1999). *See also Gabroy v. Com., CAT Fund*, 886 A.2d 716 (Pa.Cmwlth.2005), *aff'd per curiam* 590 Pa. 277, 912 A.2d 768 (2006); *St. Paul Fire and Marine Ins. Co. v. Roche*, 809 A.2d 1045 (Pa.Cmwlth.2002); *Elliott–Reese v. CAT Fund*, 805 A.2d 1253 (Pa.Cmwlth.2002), *aff'd per curiam* 574 Pa. 705, 833 A.2d 138 (2003); *DeVeaux by DeVeaux v. Palmer*, 125 Pa.Cmwlth. 631, 558 A.2d 166 (1989).

In 2002, the General Assembly repealed the Malpractice Act, which had created the CAT Fund, and replaced it with the MCARE Act, 40 P.S. §§ 1303.101–1303.910. The MCARE Act created the MCARE Fund, the purpose of which is, like

that of the CAT Fund, to pay claims against health care providers for damages awarded in medical malpractice actions in excess of the primary coverage. 40 P.S. § 1303.102. As such, the purpose and coverage obligations of the MCARE Fund are very similar to those of the CAT Fund. *Compare* 40 P.S. § 1301.102 *with* 40 P.S. § 1303.712(a), *and* 40 P.S. § 1301.701(d)(1)-(3) *with* 40 P.S. § 1303.711(d)(1)(i)-(iii). The MCARE Act specified that the rights, liabilities, and obligations of the CAT Fund were transferred to and assumed by the MCARE Fund.[25] Unlike the CAT Fund, which was an independent executive agency, the MCARE Act established the MCARE Fund as a special fund within the State Treasury to be administered by the Insurance Department. *See* 40 P.S. §§ 1303.712(a), 1303.713(a).[26] Further, the MCARE Act, like the Malpractice Act before it (*see* 40 P.S. § 1301.702(f)), specified the responsibilities of the Insurance Commissioner in regard to administering the MCARE Fund: "(d) Responsibilities.—In accordance with section 713 [relating to the administration of the MCARE Fund], the department may defend, litigate, settle or compromise any medical professional liability claim payable by the fund." 40 P.S. § 1303.714(d). With regard to appeals from MCARE Fund determinations, the MCARE Act only addresses appeals from assessment decisions. Pursuant to *Meier*, under the prior Malpractice Act, challenges to assessment decisions were in the original jurisdiction of the Commonwealth Court. The legislature explicitly

**25.** Section 712(b) provides:
> (b) Transfer of assets and liabilities.—
> (1)(i) The money in the [CAT] Fund established under [the Malpractice Act], is transferred to the [MCARE] fund.
> (ii) The rights of the [CAT] Fund established under [the Malpractice Act] are transferred to and assumed by the [MCARE] fund.
> (2) The liabilities and obligations of the [CAT] Fund established under [the Malpractice Act] are transferred to and assumed by the [MCARE] fund.

40 P.S. § 1303.712(b).

**26.** Section 712(a) provides that "[t]here is hereby established within the State Treasury a special fund to be known as the Medical Care Availability and Reduction of Error Fund," 40 P.S. § 1303.712(a), and Section 713(a) provides that "[t]he fund shall be administered by the [Insurance] department." 40 P.S. § 1303.713(a).

changed this, by specifying that appeals from assessment determinations shall be brought before the Insurance Commissioner, rather than the Commonwealth Court. 40 P.S. § 1303.712(d)(3) ("Any appeal of the assessment shall be filed with the department."). It is undisputed that the MCARE Act is silent with regard to appeals from any other MCARE Fund determination.

■■  Generally speaking, a party seeking relief must exhaust available administrative remedies before he may obtain judicial review, except where the administrative review process has nothing to contribute to the decision or is not capable of providing the relief sought. *Ohio Casualty*, 525 A.2d at 1197. The basic nature of Fletcher's complaint against the MCARE Fund is one for coverage, premised on her claim that the MCARE Fund is the excess carrier and is statutorily liable for the amount of the medical malpractice judgment over the amount paid by PPCIGA, up to $1.2 million for each doctor.[27] We must therefore examine whether the Insurance Department's administrative review process is available to Fletcher and is capable of providing the relief sought, *i.e.*, payment from the MCARE Fund of the portion of the medical malpractice judgment for which she asserts it is liable.

We answered this question in *Ohio Casualty*, where we stated that the Malpractice Act was not equipped to address claims brought directly against the CAT Fund premised on the Fund's failure to pay its share of liability, thus necessitating recourse to the courts.[28] *Ohio Casualty*, 525 A.2d at 1198.

**27.** There is no dispute that Fletcher's substantive challenge to the MCARE Fund's determination is, in essence, a coverage dispute. Both parties refer to her challenge as a coverage dispute, and we agree. Fletcher, standing in the doctors' shoes, is challenging the MCARE Fund's determination that doctors Kominsky and Kubacki and their professional corporation do not have statutory excess coverage applicable to the judgment rendered in her favor.

**28.** The MCARE Fund does not attempt to distinguish *Ohio Casualty* on its facts. It does not assert that the dispute there, from an excess insurer demanding restitution from the CAT Fund, is materially different from the one here, from health care providers (*via* an assignment of rights to Fletcher) against the CAT Fund for coverage. On the contrary, the MCARE Fund admits that under the Malpractice Act, this

*See also Lloyd,* 821 A.2d at 1232 (the Commonwealth Court has exclusive jurisdiction to hear cases involving the CAT Fund, an agency of the Commonwealth); *Willet,* 702 A.2d at 851 n. 1 (same). Therefore, unless the legislative differences between the Malpractice Act and the MCARE Act require a different result, *Ohio Casualty* compels the conclusion that the Commonwealth Court properly determined that it has original jurisdiction over Fletcher's petition for review. We now turn to the differences between the two funds, and consider whether these differences oblige us to depart from *Ohio Casualty.*

In *Ohio Casualty,* we explained that the Malpractice Act was empty of any procedure whereby an insurer could seek the remedy of restitution.[29,30] 525 A.2d at 1198. The only statutory difference offered by the MCARE Fund to justify departure from this holding is Section 713(a) of the MCARE Act, providing that the MCARE Fund is administered by the Insurance Department. The MCARE Fund argues that this difference created an administrative review process sufficient to address all MCARE Fund decisions. We disagree.

First, the MCARE Fund cannot point to any specific statutory procedure within the MCARE Act where health care providers (or Fletcher, with the health care providers' assignment of rights) can be afforded a remedy. This is the same reality that doomed the CAT Fund's identical argument in *Ohio Casualty.* See *Ohio Casualty,* 525 A.2d at 1198 ("The

dispute, and all other disputes involving the CAT Fund, would be properly in the original jurisdiction of the Commonwealth Court. Rather, the MCARE Fund's sole argument is that because the MCARE Act placed the MCARE Fund within the Insurance Department, there is now an administrative appeals process available to Fletcher that was not available pursuant to the Malpractice Act.

29. As noted, the MCARE Fund does not attempt to limit *Ohio Casualty* to its facts, other than the fact that it was decided pursuant to the repealed Malpractice Act, and, in fact, concedes that pursuant to *Ohio Casualty,* a coverage dispute such as Fletcher's would properly belong in the Commonwealth Court's original jurisdiction.

30. Although we observed that the Malpractice Act contained procedures for resolving claims by patients against providers, this reference was to 40 P.S. § 1301.309, which, as noted, was repealed after being found unconstitutional. No similar procedures were enacted with the MCARE Act.

476

[Malpractice] Act itself is empty of any specific procedure whereby appellee may be afforded a remedy of restitution."). Notwithstanding the provision directing the Insurance Department to administer the MCARE Fund, *see* 40 P.S. § 1303.713(a), the MCARE Act, like the Malpractice Act before it, does not contain any specific provision for resolving coverage disputes. Therefore, pursuant to *Ohio Casualty*, because the MCARE Fund cannot point to any statutorily prescribed procedure for Fletcher to follow, we reject the MCARE Fund's contention that Fletcher was required on this basis to exhaust administrative remedies before bringing her action in the original jurisdiction of the Commonwealth Court.

■ Second, considering that the MCARE Act was enacted long after our decision in *Ohio Casualty*, the legislature is presumed to have acted with knowledge of that decision. *See Fonner v. Shandon, Inc.*, 555 Pa. 370, 724 A.2d 903 (1999). The legislature's silence on resolution of coverage disputes in the face of, and with the presumed knowledge of, a clearly applicable Supreme Court opinion establishing original jurisdiction of challenges to CAT Fund determinations in the Commonwealth Court leads us to conclude that the legislature did not intend a change in jurisdiction. We have explained that the legislative intent to effectuate a drastic change in the law is not to be inferred by mere omission and implication. *Fonner*, 724 A.2d at 906. The failure of the General Assembly to change the law creates the presumption that the judicial interpretation was in accord with legislative intent. *Id.* The absence of an express statutory provision for the resolution of coverage disputes against the MCARE Fund supports Fletcher's position that the legislature did not intend to change the law as defined by this Court in *Ohio Casualty*. *See Birth Center v. St. Paul Companies, Inc.*, 567 Pa. 386, 787 A.2d 376, 387 (2001) ("In enacting a statute, the legislature is presumed to have been familiar with the law, as it then existed and the judicial decisions construing it."); *City of Philadelphia v. Clement & Muller, Inc.*, 552 Pa. 317, 715 A.2d 397, 399 (1998) ("The legislature is presumed to be aware of the construction placed upon statutes by the courts.").

The conclusion that the legislature did not seek to alter the original jurisdiction of the Commonwealth Court over questions involving the CAT Fund's and the MCARE Fund's statutory liability is, once again, demonstrated by the legislature's different treatment of assessment challenges. As explained above, pursuant to *Ohio Casualty*, questions of the CAT Fund's statutory liability were brought in the original jurisdiction of the Commonwealth Court. Similarly, pursuant to *Meier*, challenges to the CAT Fund's assessment determinations were also brought in the original jurisdiction of the Commonwealth Court. When it enacted the MCARE Act and repealed the Malpractice Act, the legislature, presumably with knowledge of *Meier*, singled out assessment appeals and provided a specific statutory appeal process: "Any appeal of the assessment shall be filed with the department." 40 P.S. § 1303.712(d)(3). In contrast, the legislature, presumably with knowledge of *Ohio Casualty*, was silent regarding a procedure for appealing decisions involving the MCARE Fund's statutory liability. Therefore, by addressing assessment appeals but not coverage appeals, the legislature implicitly left intact the existing appeal process for liability disputes in accord with *Ohio Casualty*. A fundamental principle of statutory construction is that when a section of a statute contains a given provision, the omission of that provision from a similar section is significant to show a different intention existed. *Commonwealth v. Bigelow*, 484 Pa. 476, 399 A.2d 392 (1979). Therefore, the legislature's failure to include a parallel provision regarding appeals involving MCARE Fund determinations other than assessment appeals implies that the legislature intended to leave intact the Commonwealth Court's original jurisdiction over such appeals.

The MCARE Fund's attempt to explain why the legislature chose explicitly to address assessment appeals but was silent with regard to all other appeals of MCARE Fund determinations is unavailing. As explained above, the MCARE Fund asserts that because, under the Malpractice Act, appeals of assessment determinations were brought in the original jurisdiction of the Commonwealth Court, in order to change this

practice, the legislature felt compelled to specify that assessment appeals belong in the Insurance Department. The same could be said of challenges to coverage determinations. Under the Malpractice Act, in accord with *Ohio Casualty*, challenges to coverage determinations belonged in the original jurisdiction of the Commonwealth Court. Therefore, if the legislature sought to alter the court's jurisdiction in this regard, it would have specified that coverage disputes should be appealed to the Insurance Department. It did not do so.

Third, as the Commonwealth Court below found, the similarity of authorized responsibilities between the CAT Fund and the MCARE Fund supports the conclusion that the legislature did not intend to change the jurisdiction of the Commonwealth Court over coverage disputes. Both the Malpractice Act and the MCARE Act authorize the Director of the CAT Fund or the Insurance Department, respectively, to "defend, litigate, settle or compromise" any claim payable by the respective Fund. 40 P.S. § 1301.702(f), and 40 P.S. § 1303.714(d), respectively. Because the responsibilities authorized by both provisions are identical, the limitations implicit in the language are the same. In *Ohio Casualty*, we concluded that such language did not authorize the CAT Fund director to determine the outcome of claims against it. *See Ohio Casualty*, 525 A.2d at 1198. The same should be said of the Insurance Department. Like the CAT Fund director before it, the Insurance Department is obligated to defend, litigate, settle, or compromise claims against the MCARE Fund, but not to determine the outcome of such claims.

Additionally, the provision directing the Insurance Department to administer the MCARE Fund, 40 P.S. § 1303.713(a), is similar to the provision of the Malpractice Act directing that the CAT Fund "shall be administered by a director...." 40 P.S. § 1301.702(a). We did not interpret the legislature's direction that the CAT Fund be administered by a director as conferring adjudicatory power on the CAT Fund's director. *Ohio Casualty*, 525 A.2d at 1197. We likewise believe that the continued authorization to administer the MCARE Fund does

not confer adjudicatory authority on the Insurance Department.

Moreover, the MCARE Fund has not demonstrated that the Insurance Department's responsibility for administration of the MCARE Fund has created an administrative remedy that is adequate with respect to the alleged injury and the relief sought; nor has it addressed the concerns we articulated in *Ohio Casualty*. In *Ohio Casualty* we specifically rejected the CAT Fund's argument that 1 Pa.Code Part II and its regulations, 31 Pa.Code §§ 242.1–242.20, provided an adequate remedy for restitution. We explained that nebulous claims of informal procedures or implied administrative powers are unavailing since there must be a concrete procedural remedy through which the litigant can achieve a resolution of his claim that does not depend on the grace of the party against whom he is proceeding. *Ohio Casualty*, 525 A.2d at 1198. As the Commonwealth Court noted in the instant case, these regulations remain largely unchanged and thus do not demonstrate the adequacy of a regulatory procedure. Although, as the MCARE Fund notes, the Insurance Commissioner promulgated a regulation providing that that an aggrieved party who disputes a written determination of the MCARE Fund may request a formal administrative hearing, the MCARE Fund does not explain how, or whether, such a review process is capable of providing the relief sought. *See* 32 Pa. Bull. 4553 (September 14, 2002) (citing 2 Pa.C.S. §§ 501–508 [31] and 701–704,[32] 1 Pa.Code Part II ("General rules of administrative

**31.** These sections apply to all Commonwealth agencies, 2 Pa.C.S. § 501, and direct that any party may be represented, 2 Pa.C.S. § 502; any Commonwealth agency can preclude a person from practice before it, 2 Pa.C.S. § 503; every party must be afforded reasonable notice and an opportunity to be heard, 2 Pa.C.S. § 504; all relevant evidence of reasonably probative value may be received, 2 Pa.C.S. § 505; all parties shall be afforded the opportunity to submit briefs and the agency may hear oral argument, 2 Pa.C.S. § 506; all agency adjudications shall be in writing and contain findings and reasons, 2 Pa.C.S. § 507; and before notice of any hearing leading to an adjudication is given by a Commonwealth agency (except the Pennsylvania Public Utility Commission), the agency shall submit the matter to its representative in the Department of Justice, 2 Pa.C.S. § 508.

**32.** Further, these sections, which are relevant to appeals from all agency determinations, 2 Pa.C.S. § 701, provide that any person ag-

practice and procedure"), and 31 Pa.Code § 56.1–56.3 ("Special rules of administrative practice and procedure")). In fact, the MCARE Fund seems to say that by providing a letter notifying Fletcher of her right to seek relief before the Insurance Department, the MCARE Fund provided an adequate administrative remedy. It is not clear, however, that providing Fletcher the opportunity to appeal administratively reveals the existence of an adequate and available administrative remedy as the MCARE Fund asserts.

Outside of the MCARE Fund context, the Insurance Department's administrative review process exists to hear appeals from agent license denials, homeowners' and automobile insurance cancelations, agency terminations, rate disapprovals, and market conduct reviews. With regard to the MCARE Fund, the only challenge that the legislature has determined should be heard by the Insurance Department is an appeal of an assessment. 40 P.S. § 1303.712(d)(3).

Finally, if, as the MCARE Fund suggests, Fletcher must administratively appeal the denial of MCARE Fund coverage within the Insurance Department, then her claim against PPCIGA would have to proceed separately in the court of common pleas. The Insurance Department has no jurisdiction over PPCIGA; it has no authority to adjudicate whether there was one or two policies involved for purposes of PPCIGA's liability. The MCARE Fund asserts that there is no reason PPCIGA cannot participate in the administrative review process. While there may be no impediment to PPCIGA's involvement, there is nothing requiring PPCIGA to participate. This means that there potentially will be two ongoing, parallel litigations. This duplication of litigation and the possibility of inconsistent outcomes is an unreasonable result, which we presume the legislature did not intend.[33] *See* 1 Pa.C.S.

grieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication has the right to appeal to the court vested with jurisdiction of such appeals, 2 Pa.C.S. § 702; provide the relevant scope of review, 2 Pa.C.S. § 703; and the options for the appellate court with regard to the disposition of appeals, 2 Pa.C.S. § 704.

**33.** We also conclude that the MCARE Fund's reference to other cases, in which the Commonwealth Court's appellate jurisdiction over appeals

§ 1922. Notably, however, if this dispute proceeds in the Commonwealth Court's original jurisdiction, the Commonwealth Court would have jurisdiction over both the MCARE Fund and PPCIGA. *See, e.g., Gabroy,* 886 A.2d 716; *Fetters,* 804 A.2d 126; *Elliott–Reese,* 805 A.2d 1253.

In conclusion, the statutory changes to the MCARE Act are too insignificant to compel us to abandon our conclusion in *Ohio Casualty* that the Commonwealth Court has original jurisdiction over claims against the MCARE Fund premised on the MCARE Fund's statutory liability. Accordingly, we affirm the Commonwealth Court and remand the matter for further proceedings consistent with this opinion.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, TODD, McCAFFERY and GREENSPAN join this opinion.

from MCARE Fund determinations was unchallenged, does not require a different result in this case. *See, e.g., Cope v. Ins. Comm'r,* 955 A.2d 1043 (Pa.Cmwlth.2008) (hearing an appeal by a health care provider from the MCARE Fund's denial of coverage); *Bender v. Pennsylvania Ins. Dep't.,* 893 A.2d 161 (Pa.Cmwlth.2006) (hearing an appeal from a determination by the Ins. Commissioner regarding a claim by doctors against the MCARE Fund for indemnification). This is a case of first impression before this Court, and our ruling is based on the law, not past cases of the Commonwealth Court.

Further, several cases that the MCARE Fund cites for the proposition that the Commonwealth Court regularly hears appeals from the MCARE Fund's determination involve assessment challenges, which, as discussed above, are statutorily required to be heard in the Commonwealth Court's appellate jurisdiction. 40 P.S. § 1301.712(d)(3). *See, e.g., El–Attrache v. Pennsylvania Ins. Dept.,* 900 A.2d 455 (Pa.Cmwlth. 2006) (hearing appeal from the order of the Insurance Commissioner denying doctor's request for an MCARE Fund assessment abatement); *Allen v. Pa. Ins. Dep't., MCARE Fund,* 903 A.2d 65 (Pa.Cmwlth.2006) (affirming the Insurance Commissioner's decision to deny health care provider's abatement application nunc pro tunc).